## CASE OF THE TWELVE COMMITMENTS.

*N. Y. Common Pleas ; before Hon. Charles P. Daly, F. J.,*
*October, 1865.*

DISORDERLY CONDUCT.—CONVICTION AND COMMITMENT.

The distinction between a commitment under the statutes relating to the city of New York, for disorderly conduct, and under the Revised Statutes, for being a disorderly person, stated.

Upon a conviction for disorderly conduct, the making and filing of a record, is not necessary.*

The act of 1859, empowering the magistrate to impose a fine of not more than $10, or to commit to the city prison for not more than ten days (*Laws of* 1859, 1129, ch. 491, § 5), does not take away the power to require security for good behavior for any period not exceeding twelve months, and commit the offender for such period in default of compliance.†

The provision of the act of 1860, declaring certain acts to be disorderly conduct (*Laws of* 1860, 1013, ch. 508, § 20), does not repeal or supersede that of the act of 1833, which provides that any conduct which, in the opinion of the magistrate, tends to a breach of the peace, may be punished as disorderly conduct.

It is not necessary that a commitment for disorderly conduct should set forth the particular act complained of.

If the magistrate acted erroneously, or upon insufficient evidence, the remedy is not by *habeas corpus*, but by certiorari.

An order of transfer of a prisoner from the city prison to the workhouse must be made by the Board of Public Charities and Correction ; but if by its terms it purports to be their act, an authentication by the signature of one of the commissioners is sufficient, at least when questioned upon *habeas corpus*.

A commitment for disorderly conduct until the party shall find security for his good behavior, without qualification as to time, is void. It should be limited to a specified period not exceeding twelve months.

The writ of *habeas corpus*, issued to inquire into the cause of an imprisonment, is in the nature of a writ of error ; and when allowed and heard by an officer out of court (under the Revised Statutes), the officer is deemed a court within the meaning of the act of 1864, which forbids certain prisoners to be discharged before the expiration of sentence, except upon review by a court of superior jurisdiction to the magistrate making the commitment.

Where an authority is created by statute, with power to fine or imprison, the officer, person, or body invested therewith is, for that purpose, deemed a court.

Writs of *habeas corpus* were issued at the instance of Helena Miller and eleven other persons, imprisoned upon Blackwell's

---

* See, also, Williamson's Case, *Post*, 413.
† See, also, Ann Doyle's Case, *Ante*, 269.

Island, upon commitments for disorderly conduct in the city of New York.

DALY, F. J.—The parties in the above cases have been brought before me upon writs of *habeas corpus*, and the authority upon which they are held upon writs of certiorari. They have been severally committed by police justices for disorderly conduct, upon failing to give security for their good behavior, to the city prison, and from thence have been transferred to the workhouse upon Blackwell's Island. Their discharge is sought upon the ground that the original commitments, in every case, are void, and upon the further ground, in some of the cases, that the transfers to the workhouse were not in the mode prescribed by law.

As many laws have been passed in respect to those summary convictions, and as a great deal of uncertainty prevails as to the correct mode of procedure under them, it will be necessary for me to review the various statutory enactments, that I may pass intelligibly upon the questions raised.

In that portion of the Revised Statutes relating to the internal police of the State (1 *Rev. Stat.*, ch. 20, part I., titles 2 and 5), an enumeration is made of two classes of offenders: 1st, vagrants; 2d, disorderly persons. Under the head of vagrants are embraced: 1st, idle persons, living without employment, and having no visible means of support; 2d, beggars; 3d, persons wandering abroad, and sleeping in the open air, or other specified places. And disorderly persons are substantially designated—as: 1st, Those who abandon their wives and families; 2d, prostitutes; 3d, fortune-tellers; 4th, mountebanks; 5th, common showmen; 6th, gamblers; and 7th, keepers of bawdy-houses.

The first class, vagrants, upon conviction before a magistrate, may be committed to the poorhouse for six months, or, if improper persons to be sent there, may be sent to the county jail for sixty days. The second class, disorderly persons, upon conviction, may be required by the magistrate to give security for their good behavior for a year, and, failing to do so, may be committed to the common jail until they find such security, or are discharged by law. Upon the conviction of a vagrant, a record of the conviction must be made up by the magistrate,

and filed in the county clerk's office; and on the commitment of a disorderly person, upon failing to give security, a record must also be made up in the same way and filed.

In 1833, an act was passed for the regulation of the criminal courts of this city (*Laws of* 1833, 9, ch. 11), which, among other things, embraced an enumeration of the class known as vagrants, which is more extensive than that contained in the Revised Statutes, and an addition was made to the class known as disorderly persons. This act, which was limited to the city of New York, authorized the mayor, recorder, or any police justice of the city, to commit vagrants, who are not notorious offenders, to the almshouse for six months at hard labor; or, if not fit persons to be sent there, then to the penitentiary for the same period. It provided for the commitment of disorderly persons in the same manner as in the Revised Statutes, and in both cases required the filing of a record of the conviction.

This act made provision also for what is denominated in the act disorderly conduct, which by one section (§ 5) is the riding or driving of a horse through the public streets at a greater rate of speed than five miles an hour; and in another section (§ 8) is declared to be such disorderly conduct as, in the opinion of the magistrate, tends to a breach of the peace. For the offence of improper driving, the magistrate is authorized to impose a fine of $10, and if it is not paid, to commit the offender to the city prison until it is paid, but not for a longer period than ten days; and for the offence of disorderly conduct tending to a breach of the peace, he is empowered to require the offender to give security for his or her good behavior for a period not exceeding twelve months. The statute is silent as to what the magistrate is to do, if the security is not given; but though not expressed, the intention is manifestly implied that the offender is to be committed until he gives it, or until the expiration of the period for which he was required to give it; and such, since the passage of the act, has been the course of procedure under it.

The disorderly conduct here referred to is distinguishable and different from those acts which will constitue a disorderly person or a vagrant, as defined in this statute and by the Revised Statutes. In common parlance, a person guilty of disorderly conduct may be said to be a disorderly person; but

we have here to do with statutes that have carefully defined
what is to be understood by the term "a disorderly person,"
and which have distinguished the offence of disorderly conduct
as simply the offence of improper driving, or such conduct as,
in the opinion of the magistrate, tends to a breach of the peace;
and it has been the failure to observe this distinction, and the
confounding of one term with the other, that have led to a
great deal of the practical difficulty attending the administra-
tion of this branch of our criminal law. The term disorderly
conduct, as distinguishing an offence different from that which
will constitute a disorderly person, was used in our statutes
long before the passage of this local act of 1833, or the adoption
of the Revised Statutes (*Laws of* 1816, 171, 172, § 2; 1 *Rev.
Laws of* 1813, 114; 2 *Ib.*, 354); and in addition to what has
been above pointed out, there are other features which serve
to distinguish the one from the other. The act of 1833 re-
quires a record to be filed upon the commitment of a disorderly
person who fails to give the requisite security (§ 7); but it
makes no such provision in respect to disorderly conduct (§ 8).
In the case of disorderly conduct, moreover, the magistrate
may require security for the offender's good behavior, for any
period he may think proper to designate, not exceeding twelve
months. He may take it for a week, or for a month, or for any
time within the statutory limit; whereas, in the case of a dis-
orderly person, he must take it for a year, and not for any lesser
period. There are, therefore, under the statutes regulating
their summary conviction before a magistrate without a jury,
three classes: 1st, vagrants; 2d, disorderly persons; and 3d,
persons guilty of disorderly conduct,—each of which is distin-
guishable from the other, and in each the course of procedure
is different.. All the cases now before me are commitments for
disorderly conduct; and in passing upon the questions that
have been raised as to the validity of these commitments, I
shall examine only such statutory provisions as, in my judg-
ment, relate exclusively to this class of convictions.

The first objection is, that no record has been filed. It is
not necessary. The fact that the statute of 1833 makes pro-
vision for the filing of a record upon the commitment of a va-
grant or of a disorderly person, and makes no such provision
in relation to convictions for disorderly conduct, must be taken

as an expression of the legislative intention, that this class of convictions were intended to be of a more summary character, in which the formality of a record was to be dispensed with. They have been uniformly so regarded ; and during the thirty-two years that have elapsed since the passage of the act of 1833, it has never been the practice to make up and file records of conviction in such cases.

In 1859, an act was passed in relation to police justices in this city (*Laws of* 1859, 1129, ch. 491), by which it was provided (§ 5) that in all cases of arrest for intoxication or disorderly conduct, the police justice, in addition to holding the party to bail for good behavior, should have power to impose a fine to the extent of $10, or to commit to the city prison for a period not exceeding ten days, each day of imprisonment to be taken as a liquidation of one dollar of the fine.

It is insisted that since the passage of this act there can be no commitment for a greater period than ten days—that all the magistrate can do is to require the party to give security for good behavior; and if it is not given, to impose a fine of $10 or less; and if that is not paid, commit to the city prison for ten days or less.    But this, by the express word of the statute, is a power given in addition to that which authorized the magistrate to require security for the party's good behavior for a period not exceeding twelve months ; and the use of the words "in addition" is a plain indication of the intention that the previous power was to continue.   As I interpret the statute, therefore, the justice may, as he could do before, require the party to give security for any period not exceeding twelve months, and commit him if he fails to give it ; or he may impose a fine to the extent of $10, and if it is not paid, commit the party for a number of days corresponding with the amount of the fine.   As a large number of those who are arrested for disorderly conduct are composed of a class generally unable to give security, the discretion is certainly a very large one which allows a magistrate to commit them to prison for twelve months, when for much graver offences the Court of Special Sessions can sentence an offender for no longer a period than six months ; and this becomes the more serious when it is considered that the right to commit for disorderly conduct is not expressly given, but merely implied.   In the commitment of

vagrant or disorderly persons, moreover, the magistrate is required to distinguish between those who should be sent to the almshouse at hard labor, at present known as the workhouse, and those who should be sent to the penitentiary. In the commitment of disorderly persons, not only is the filing of a record of conviction directed, but the keeper of the jail is required (1 *Rev. Stat.*, 639) to return to the next court of General Sessions a list of all persons so committed and in his custody, with a statement of their offences, the names of the justices committing them, and the term during which they have been in prison ; and the court is directed to inquire into the circumstances, to hear any proof that may be offered, to examine the record of conviction, and in its discretion may either discharge the offender or order him to be left in jail for a period of six months. But no such supervisory power exists in commitments for disorderly conduct; nor until 1857 was there any means by which a person so committed could review the decision of the justice, or be discharged from the commitment, except by giving security, which, as a general rule, it is not in the power of this class of persons to obtain. The power which the magistrate and the Commissioners of Public Charities and Correction have, to discharge from the workhouse or penitentiary, applies only to the case of vagrant and disorderly persons, and not to those convicted merely of disorderly conduct.. (*Laws of* 1853, 353, ch. 183; *Laws of* 1855, 451, ch. 268; *Laws of* 1860, 1008, ch. 508, § 5.)

The strange anomaly is therefore presented, that the former, who are guilty of much graver offences, have their conviction reviewed at the next term of the Court of General Sessions; that they cannot, in any event, be imprisoned for a longer period than six months, and may be discharged by the Court of Sessions, or at any time during their imprisonment by an order of two of the Commissioners of Public Charities and Correction, with the approval of the magistrate that committed them: while the latter, whose offences are of a lighter degree, may be imprisoned for twelve months, and cannot be discharged unless they give security. An act was passed in 1857 (*Laws of* 1857, vol. 2, 708), amended in 1859 (*Laws of* 1859, 794), by which a writ of certiorari to the Court of Sessions to review a conviction in a police court may be allowed by a justice of the Supreme

Court; but until the passage of this act there was no means by which any error, mistake, or injustice in a commitment for dis- orderly conduct could be interfered with by any officer or tri- bunal; and the committing magistrate was clothed with a power which, whether rightly or wrongly exercised, was be- yond review or remedy. Our statutes, in this particular, are in a state certainly calling for amendment; and it is to be hoped that the consideration of this subject will be brought to the attention of the Legislature.

By an act passed in 1860 in relation to the police and courts in this city (*Laws of* 1860, 1013, ch. 508), it was provided (§ 20) that every person in this city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offences, that is to say :

" 1st. Every person who shall suffer to be at large any un- muzzled, ferocious, or vicious dog.

" 2d. Every common prostitute or night-walker, loitering or or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by.

" 3d. Every person who shall use any threatening, abusive, or insulting behavior, with an intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned."

It is claimed that this is a legislative exposition of what is meant by disorderly conduct; that it defines and limits the nature of the offence, and that every commitment must show upon its face that the offender was found guilty of some one of the acts above specified.

But this statute cannot be taken as repealing those parts of the act of 1833 providing for the punishment of disorderly con- duct. It declares that the cases specified shall constitute dis- orderly conduct; but neither in its terms nor by implication does it limit it to such cases. It is not in conflict nor in any way inconsistent with the pre-existing act of 1833, by the pro- visions of which any conduct is disorderly which, in the opinion of the magistrate, tends to a breach of the peace. In respect to the acts or offences particularized, it leaves nothing to the dis- cretion or opinion of the magistrate, if the fact is proved; but does not go beyond that. It is not desirable that it should, for

there are many acts which tend to produce a breach of the peace that it would be difficult to bring within any statutory positive definition. The discretion with which the magistrate is clothed by the act of 1833, to require security for good behavior when the conduct of the offender has been such as, in the opinion of the magistrate, has a tendency to lead to a breach of the peace, is a salutary one. It is indispensable in a great metropolis like this, to secure the preservation of good order; and it is not to be assumed that the Legislature meant to take away what was so essential to its preservation, unless that intention is unmistakably expressed.

The next objection is, that none of the commitments, except in one case, specify any act that was done, tending to a breach of the peace. It is insisted that the commitment should set forth, either that the party was convicted of some one of the acts specified in the amendatory statute of 1859; or some act or acts should be stated which, in the opinion of the magistrate, had a tendency to produce a breach of the peace.

This objection is not tenable. Where the criminal process under which the party is imprisoned is returned, as in these cases, in answer to the writ of *habeas corpus*, all that the officer granting the writ can do is, to examine the process to see if the officer or court whence it emanated had jurisdiction of the subject-matter; and if that appears upon the face of the process, the prisoner must be remanded to the custody from which he was taken. The officer making these commitments may have acted upon insufficient evidence, or without any evidence at all; but that is not a matter which can be inquired into upon *habeas corpus*. (The People *a.* Cassels, 5 *Hill*, 168; Bennac *a.* The People, 4 *Barb.*, 31; The People *a.* McLeod, 25 *Wend.*, 483; 1 *Hill*, 377; In the Matter of Clarke, 9 *Wend.*, 483; In the Matter of Prime, 1 *Barb.*, *S. C.*, 340; Case of the Sheriff of Middlesex, 11 *Ad. & Ellis*, 273.) "A warrant," says Justice WILLARD, in Bennac *a.* The People, *supra*, "issued upon the conviction of a party as a disorderly person, is not required to recite any fact but such conviction;" and in the learned note of the late Mr. HILL upon the nature of the writ of *habeas corpus* (3 *Hill*, *Appendix*, 658, notes 30, 31), he says, after a citation of the authorities: "Neither this [the English] nor our own statute was intended to authorize an inquiry into the validity of writs,

warrants, or other process, further than to ascertain whether they will protect the party suing them out, or the officer serving or executing them. . . . If the object be to impeach it as irregular, or as founded on an erroneous or irregular judgment, decree, or conviction, you can no more inquire of such things collaterally by *habeas corpus*, than by action or indictment. . . . Error, irregularity, or want of form, is no objection. . . . Where the process is sufficient to protect the party and officer, the imprisonment is lawful, and must be relieved against by direct proceedings,—*e. g.*, a writ of error, certiorari," &c.

The commitments in these cases declare that the prisoner was charged before the magistrate, upon the oath of a witness who is named, with such disorderly conduct as, in the opinion of the magistrate, tends to a breach of the peace; that the prisoner was required to give security for his good behavior; that he failed to do so; and closes with the order that he be committed to the city prison for a period named, which in no one of the cases is greater than six months, or until he find security. This is amply sufficient to show that the police justice in each case acted in a matter of which he had jurisdiction, and that he had authority to do what he did. If he acted erroneously or upon insufficient evidence, the prisoner's remedy is to procure the allowance of a writ of certiorari to the Court of Sessions to review the justice's judgment under the amendatory act of 1859. (*Laws of* 1859, 794.)

The next objection is to the mode by which the prisoners were transferred from the city prison to the workhouse on Blackwell's Island. The act abolishing the almshouse and creating the Department of Public Charities and Correction (*Laws of* 1860, 1026, ch. 510), authorizes the board of commissioners to transfer and commit from the city prison to the workhouse, vagrants, disorderly persons and persons committed for crime. There might be some doubt whether persons committed to the city prison for disorderly conduct would be included in either of the classes above specified; but that doubt is set at rest by the passage of the act of 1864 (*Laws of* 1864, 1342, ch. 586), which is not only a legislative recognition that such was the intention, but an act designating the time at which the transfers may be made in such cases. This disposes of the first objection made upon this ground.

In some of the cases before me, the order for the transfer is signed merely by one of the commissioners, and there is nothing upon the face of the paper to denote that it was done by order of the board. This is not sufficient. The power is given by the statute to this board, and not to any one of the commissioners; and to warrant the transfer, it must at least appear that the board acted in the premises. In the other cases, the order for the transfer purports upon its face to be made by the direction of the board, and is authenticated by the signature of one of the commissioners. This is, in my judgment, sufficient in answer to a writ of *habeas corpus*.

In some cases, the party is committed until he finds security in a certain sum for his good behavior. Such a commitment is void, as the justice can require the party only to give security for some period, not exceeding twelve months; and under a commitment like this, the party, if he could not find security, would be detained beyond twelve months. It is, in such an event, equivalent, in fact, to perpetual imprisonment.

In other cases, the commitments are defective, as they fix no positive term of imprisonment, other than that it is not to exceed six months. They do not declare for what period the party was required to give security for his good behavior, but simply direct that he shall be imprisoned for a period not exceeding six months.

The last objection is, that a judge upon *habeas corpus* has no power to discharge a commitment for disorderly conduct, in any case or for any cause.

By an act passed in 1864 (*Laws of* 1864, 1342, ch. 586), it is declared that no person committed to the said city prison or the workhouse for drunkenness or disorderly conduct, shall be released or discharged from confinement before the expiration of the term for which he or she shall be committed, except upon reversal of judgment upon appeal, or review by a court of superior jurisdiction to the magistrate making the commitment, without a written order, directing such discharge, be made and signed by the committing magistrate and one of the Commissioners of Public Charities and Correction.

It is not to be assumed that the Legislature intended to take away the privilege of the writ of *habeas corpus*, where the citizen is deprived of his liberty by an officer acting totally

without jurisdiction, unless it is clear that such was the intention; and I do not think that such was the design of this act. A restrictive act of an analogous character was passed in 1855 (*Davies' Laws* relative to the city of New York, 1194), forbidding the discharge of vagrants from the penitentiary or workhouse, unless upon a writ of *habeas corpus* or certiorari, except by an order of the governors of the almshouse; and by an act passed in 1860 (*Valentine's Laws* relating to the city of New York, 606), it was provided that disorderly persons should not be discharged without the written approval of the magistrate committing them, except by a court of competent jurisdiction or other legal proceedings for that purpose. The act of 1864 is not as carefully worded as these two acts in relation to vagrant and disorderly persons, but I think the intention was the same, and that the words, " or review by a court of superior jurisdiction to the magistrate making the commitment," may be held to embrace the extent to which a judge, upon *habeas corpus* and certiorari, may review the proceedings of magistrates upon criminal process; that is, to the extent of ascertaining whether the magistrate acted in a matter of which he had jurisdiction. The writ of *habeas corpus* was from its inception a prerogative writ. At common law, it stood upon the same footing as other writs of that character, such as a *quo warranto*, mandamus, certiorari, prohibition, &c., and was dealt with upon the like general grounds and principles. (3 *Bl. Com.*, 131–2; Rex *a.* Cowle, 2 *Burr*, 855–6.) The proceedings under it, as in all prerogative writs, were regarded as appellate in their character (*Ingersoll on Habeas Corpus*, 36; Yates' Case, 4 *Johns.*, 360; *Bacon's Abr. Habeas Corpus*, A.); and it is said by Chief-justice Marshall, in *Ex parte* Tobias Watkins (3 *Pet.*, 203), to be "in the nature of a writ of error which brings up the body of the prisoner with the cause of commitment." In this State, where the writ issues on behalf of a person restrained of his liberty, the proceedings are regulated by statute, by which the provisions of the common law have been abrogated, except so far as they may be necessary to carry out the provisions of the statute. (2 *Rev. Stat.*, 573, § 73.) By the statute the writ issues under the seal of the Supreme Court; and whether allowed and heard by the court or by an officer authorized to grant it, the proceedings are the

same, and the judge or officer before whom it is returnable is clothed with all the power given by the statute to the court. (3 *Hill*, Appendix, note 5.) He may, therefore, be said to act, within the limits prescribed by the statute, as a court. ·There are in a court, according to Blackstone, three constituent parts, *actor, reus*, and *judex;* the *actor*, or plaintiff, who complains of an injury done ; the *reus*, or defendant, who is called upon to make satisfaction for it; and the *judex*, or judicial power, which is to examine the truth of the fact, the law arising upon it, and, if an injury has been done, to apply the remedy. (3 *Bl. Com.*, 25.) All these exist in the proceeding which is had before a judge upon a writ of *habeas corpus*. He acts not ministerially, but judicially. (3 *Hill*, Appendix, note 4.) The statute gives him the right to imprison (§ 34) ; and where an authority is created by statute, with power to fine or imprison, the officer, person, or body invested with such authority is, for that purpose, deemed a court. (Denbawd's Case, 10 *Coke*, 103 ; Grenville *a.* The College of Physicians, 12 *Mod.*, 388 ; Groenvelt *a.* Burwell, 1 *Comyns*, 76 ; S. C., 1 *Salk.*, 200 ; 3 *Bl. Com.*, 24 ; Briggs *a.* Mackellar, 2 *Abbotts' Pr.*, 61.)

The power, therefore, which a judge exercises upon *habeas corpus* to inquire into the cause of the detention, where a party is deprived of his liberty, is, in the language of the statute of 1864, as applied to cases like this, a review by a court of superior jurisdiction to the magistrate making the commitment.

This disposes of all the questions before me ; and the parties brought up upon the several writs will be remanded or discharged according as the decision affects their several cases.