## SUPREME COURT — NEW YORK COUNTY.

### April, 1923.

## THE PEOPLE v. MORRIS LIPSCHITZ.

(120 Misc. 633.)

DISORDERLY CONDUCT—MAGISTRATE'S COURT OF THE CITY OF NEW YORK HAS JURISDICTION OF OFFENSE—NEW YORK CITY CONSOLIDATION ACT, §§ 1458, 1459, 1461, NOT REPEALED BY PENAL CODE—CERTIFICATE OF REASONABLE DOUBT DENIED.

Sections 1458, 1459 and 1461 of the New York City Consolidation Act, when read together authorize magistrates to deal with the offense of disorderly conduct tending to a breach of the peace not only to the extent specifically defined in section 1458 but also broadly with the common-law offense of disorderly conduct tending to a breach of the peace and were not repealed by the Penal Code, section 2 of which (now Penal Law, section 22) declared that no act or omission begun after said Code took effect should be deemed criminal or punishable unless so prescribed by said Code or by some statute of this state not repealed by it.

Therefore, any act or omission which was deemed criminal or punishable by those sections of the Consolidation Act prior to the time the Penal

Code took effect remained cognizable in precisely the same way there-after, and this is so even if it be held that the Penal Code abolished common-law crimes.

Defendant was convicted of disorderly conduct under section 1459 of the New York City Consolidation Act which declares that ''When-ever it shall appear on oath of a credible witness before any police justice in said city and county that any person in said city and county has been guilty of any such disorderly conduct as in the opinion of such magistrate tends to a breach of the peace, the said magistrate may cause the person so complained of to be brought before him to answer the said charge.'' Upon the denial of an application for a certificate of reasonable doubt as to whether the conviction should stand, made on the ground that the offense to be punished was not described with sufficient accuracy, *held*, that while the words ''in the opinion of the magistrate'' may have been and probably were entirely superfluous they were capable of wholly rational interpretation consistent with the validity of the statute and there was no reason to give to them an extraordinary connotation in order to furnish the basis for declaring invalid what is apparently a very simple enactment, in harmony with the historical significance of the offense aimed at.

The history of the offense of ''disorderly conduct'' under the common law and the fact that the legislation now assailed has been success-fully administered in this state for forty years, and in part at least for fifty years preceding that term, is almost sufficient in itself to re-quire a denial of defendant's motion for a certificate of reasonable doubt.

APPLICATION for certificate of reasonable doubt.

*Joab H. Banton, District Attorney (Howard Hilton Spell-man*, of counsel), for plaintiff.

*John Macauley (K. Henry Rosenberg*, of counsel), for defendant.

BIJUR, J.:

The chief point urged on this application is that section 1459 of the Consolidation Act, under which appellant was convicted, is null and void and unenforcible for the reasons: (a) That it does not define or describe the acts or conduct which it under-takes to prohibit, and (b) that it fixes no standard of guilt, but

leaves such standard to the varying views of the different magistrates who may be called upon to enforce it. Appellant's counsel in his brief " to sustain this claim " refers to People ex rel. Potter v. Managers Wayside Home (119 Misc. Rep. 428), an opinion by Mr. Justice Benedict, followed by a citation of similar decisions without opinion by three other justices in the Second Department. As against these cases Mr. Justice Wagner has upheld the validity of the statute. (People ex rel. Goldstein v. Warden of Penitentiary, 120 Misc. Rep. 630.) Appellant urges that in view of this difference of opinion there is reasonable doubt as to whether the conviction appealed from can stand, and that a certificate of reasonable doubt should, therefore, issue. The situation, however, is not quite as simple as thus stated. An examination of the respective opinions shows that Mr. Justice Wagner rejected the view that the statute failed to define any fixed standard of guilt, but that that subject was not considered at all by Mr. Justice Benedict in view of his opinion on the invalidity of the statute for other reasons. The situation, therefore, as disclosed, is that the question of the definiteness of the statute seems never to have been considered except by Mr. Justice Wagner, who has found it valid in that respect, and in whose conclusion I concur; but that the statute has been found invalid for altogether different reasons by Mr. Justice Benedict, who frankly concedes, however, that his conclusion is opposed to the authorities in the First Department, notably People v. Mansi (129 App. Div. 386), and is supported only by way of inference from certain decisions in the Appellate Division in the Second Department. Under these circumstances there seems to me to be no *prima facie* ground for the issuance of a certificate of reasonable doubt. Moreover, I am unable to concur in the views expressed by Mr. Justice Benedict in his very informing opinion. The provisions to be considered directly are sections 1459 and 1461 of the New York City Consolidation Act (Laws of 1882, chap. 410), reading as follows: " § 1459. Whenever it shall

appear, on oath of a credible witness before any police justice in said city and county, that any person in said city and county has been guilty of any such disorderly conduct as in the opinion of such magistrate tends to a breach of the peace, the said magistrate may cause the person so complained of to be brought before him to answer the said charge." "§ 1461. In all complaints before any magistrate in the city of New York, for disorderly conduct it shall be lawful for such magistrate, if in his opinion such disorderly conduct tends to a breach of the peace, to require the party against whom such conduct may be proved, either by his or her own confession, or by competent testimony, to give sufficient surety or sureties for his or her good behavior for any term not exceeding twelve months, and the magistrate who may have required such surety or sureties may in his discretion at any time discharge the same." The discussion requires also a consideration of section 1458, reading as follows: "Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say: 1. Every person who shall suffer to be at large any unmuzzled, ferocious or vicious dog. 2. Every common prostitute or night-walker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation to the annoyance of the inhabitants or passersby. 3. Every person who shall use any threatening, abusive or insulting behavior with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned." Section 1562 (originally Laws of 1859, chap. 491), although not directly involved in the present application, accords the magistrate power to impose a fine in addition to exacting security for good behavior " in all cases of arrest for intoxication or disorderly conduct in the City of New York." Mr. Justice Benedict notes that section 1458 and section 1459 were originally sections 20 and 21, respectively, of chapter 508 of the Laws of 1860 (which

prescribe varying degrees of penalties for a number of minor offenses) ; that section 1461 was originally section 5 of chapter 11 of the Laws of 1833, a generally similar enactment. He then adds: "My opinion * * * is that the Legislature did not intend either by section 8 of the act of 1833 (Consol. Act, § 1461) or by section 21 of the act of 1860 (Consol. Act, § 1458), to create any new offense. The language of these provisions makes it clear that they were intended to be merely administrative and auxiliary provisions enabling the courts better to deal with an offense already existing; for it was an offense at common law to commit any act likely to provoke a breach of the peace. (Citing authorities.) And the essence of the offense of disorderly conduct, as referred to in these statutes, was that it tended to a breach of the peace. Common-law crimes still existed in this State in 1833 and in 1860, and were only abolished by the Penal Code, which took effect in 1882. (Penal Code, § 2.) Now, however, that the common-law offense of committing an act tending to a breach of the peace has been abolished by statute, these auxiliary and administrative provisions of the Consolidation Act, in so far as they relate to such common-law offenses, must fall with it, leaving the offense of disorderly conduct tending to a breach of the peace, so far as cognizable by the Magistrates' Courts of the City of New York, as comprising only the acts specified in section 1458 of the Consolidation Act with sections 1459 and 1461, still effective in so far and only in so far as they are auxiliary thereto." I am unable to agree with the conclusion reached by Mr. Justice Benedict for the following reason : He concedes, as I understand it, and that has undoubtedly been the prevailing view, that sections 1458, 1459 and 1461, when read together, authorized magistrates to deal with the offense of disorderly conduct tending to a breach of the peace not only to the extent specifically defined in section 1458, but also broadly with what he classes as the common-law offense of disorderly conduct tending to a breach of the peace. This view interprets section

1458 merely as defining certain offenses which must be regarded as disorderly conduct tending to a breach of the peace, leaving the general scope of that offense to be covered by sections 1459 and 1461. (People v. Mansi, *supra;* Case of the Twelve Commitments, 19 Abb. Pr. 394.) In saying that "common-law crimes were abolished" by the Penal Code in 1882 the learned justice has expressed a thought which, while perhaps quite true as a general statement from one point of view, is inapplicable to the precise subject under discussion. The language of the Penal Code (as originally passed, § 2, now Penal Law, § 22) is as follows: "No act or omission begun after the beginning of the day on which this Code takes effect as a law, shall be deemed criminal or punishable, except as prescribed or authorized by this Code, or by some statute of this state not repealed by it." It will be observed that this section does not expressly speak of common-law crimes, either as abolished or otherwise. Laying aside all inference as unnecessary, in view of the plain language of the exactment, we find it to say that after the statute takes effect an act shall *not be deemed criminal or punishable* unless so prescribed by the Penal Code or *by some statute not repealed by it.* Concededly sections 1458, 1459 and 1461, which we are discussing, were not repealed by the Penal Code. It seems to me to follow, therefore, inexorably, that any act or omission which was "deemed criminal or punishable" by those sections prior to 1882 remained cognizable in precisely the same way after 1882. In other words, the Penal Code has had no effect on sections 1458, 1459, and 1461. The same conclusion follows even if we choose to say that the Penal Code has "abolished common-law crimes," except as saved by the language of its sections. If sections 1458, 1459 and 1461 of the Consolidation Act define or render punishable any common-law crimes the alleged "abolition of common-law crimes" said to be effected by the Penal Code must be understood to except those crimes whose definition or punishment is provided for in the status expressly saved by the same enactment. Rather scholas-

tic discussion along this line, however, is unnecessary because the text and the plain intendment of the Penal Code, section 2, leave no doubt as to its effect. Were support needed for this interpretation it would be lent by the accepted view that this class of offenses of which jurisdiction has been and may be conferred upon police magistrates is commonly regarded as " petty," below the grade of crimes, and to be dealt with, therefore, under different rules and according to other principles than the major offenses usually spoken of as crimes. (Callan v. Wilson, 127 U. S. 540, 555; People ex rel. Reynolds v. Warden, 44 Misc. Rep. 150, 152; People ex rel. Burke v. Fox, 205 N. Y. 490, 492, citing Steinert v. Sobey, 14 App. Div. 505, 507.) Coming then to the contention that the offense to be punished is not described with sufficient accuracy I find no difficulty in the phrase " in the opinion of such magistrate " in its context, namely, " such disorderly conduct as in the opinion of such magistrate tends to a breach of the peace." It is plain that in order to determine whether disorderly conduct tends to a breach of the peace it is necessary that the magistrate exercise his judgment or opinion to that effect. (Goff, J., in Cohen v. Warden of Workhouse, 150 N. Y. Supp. 596.) Since a breach of the peace has not—by the very hypothesis—occurred, the magistrate could not arrive at the conclusion that the disorderly conduct complained of tends to a breach of the peace without exercising his judgment or opinion thereon and to that effect. Naturally and necessarily the opinion which the magistrate may arrive at is not arbitrary, but judicial, and it is an " opinion " which is prescribed by the statute—not a guess. The words " in the opinion of the magistrate " may have been and probably were entirely superfluous. They are, however, capable of wholly rational interpretation which is consistent with the validity of the statute, and I see no reason for giving them an extraordinary connotation in order to furnish the basis for declaring invalid what is apparently a very simple enactment, in harmony with the historical significance of the offense aimed

at. We must not lose sight of the fact that the very offense " breach of the peace " is one that has not been, and from the very nature of the case cannot be, described or confined within certain arbitrary limits. And this is at least equally true of acts which " tend " to produce such a breach. The very fact that breach of the peace and disorderly conduct tending to a breach of the peace have been concededly recognized as judicially cognizable offenses at common law for centuries is sufficient indication that they are so defined and definable as to be dealt with according to law. (People ex rel. Frank v. Davis, 80 App. Div. 448; Respublica v. Teischer, 1 Dall. 335.) In offenses of this kind the standard is that of what Judge Holmes in his " Common Law " calls " the average member of the community " observing the " current morality." There are many liabilities, both civil and criminal, which depend upon no more accurately fixed standards, as, for example, nuisance, negligence, attempts to commit crimes, and, notably under section 898a of the Code of Criminal Procedure, professional criminals frequenting a public place *" for an unlawful purpose."* An interesting parallel may also be drawn from the language of the Penal Law, section 43, which prescribes punishment for an act which " endangers the public peace." (See, also, People v. Tylkoff, 212 N. Y. 197, 202.) Appellant's chief reliance in support of his contention of the vagueness of the definition of the offense is upon the cases of United States v. Cohen Grocery Co. (255 U. S. 81) and Collins v. Kentucky (234 id. 634), which in turn is based upon International Harvester Co. v. Kentucky (Id. 216). To appreciate the character of the legislation condemned in these two decisions it suffices to quote from the language of Mr. Justice Holmes in the International Harvester Case, at page 223: " We regard this decision as consistent with Nash v. United States (229 U. S. 373, 377), in which it was held that a criminal law is not unconstitutional merely because it throws upon men the risk of rightly estimating a matter of degree—what is an undue restraint of trade.

That deals with the actual, not with an imaginary, condition other than the facts. It goes no further than to recognize that, as with negligence, between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach, and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust. The conditions are as permanent as anything human, and a great body of precedents on the civil side coupled with familiar practice makes it comparatively easy for common sense to keep to what is safe. But if business is to go on, men must unite to do it and must sell their wares. To compel them to guess on peril of indictment what the community would have given for them if the continually changing conditions were other than they are, to an uncertain extent; to divine prophetically what the reaction of only partially determinate facts would be upon the imaginations and desires of purchasers is to exact gifts that mankind does not possess." In United States v. Cohen Grocery Co. (supra) the Federal Food Control or "Lever Act" was under consideration. Chief Justice White said of this (at page 89) : " Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury." I find no parallel, theoretical or practical, between the legislation discussed in these two decisions and the enactment which I am considering making punishable " disorderly conduct which in the opinion of the magistrate

tends to a breach of the peace." Moreover, the history of this offense under the common law, and the fact that the legislation now assailed has been successfully administered in this State for forty years, and in part at least for fifty years preceding that term, is almost sufficient in itself to require a denial of the certificate of reasonable doubt applied for.

Ordered accordingly.