THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* OSCAR WECKER, Appellant.

Court of Special Sessions, First Department, City of New York, August 17, 1930.

*Kopp, Markewich & Null,* for the appellant.

*Thomas C. T. Crain, District Attorney [George E. Hall* of counsel], for the respondent.

FRESCHI, J. A violation of section 722 of the Penal Law (as amd. by Laws of 1924, chap. 476) is here charged against the appellant in a complaint made by the arresting policeman, who alleges that the appellant, while picketing in front of the store at 94 Clinton street, New York city, where he had been previously employed as a salesman, (1) used threatening, abusive and insulting behavior; (2) interfered with pedestrians; (3) told people not to enter said store; (4) abused the arresting officer, and (5) caused a crowd to collect — all with intent to provoke a breach of the public peace and whereby a breach of the peace might be occasioned. A city magistrate adjudged the appellant guilty and imposed a fine or, as an alternative, a prison sentence if the fine were not paid. From said conviction this appeal is taken.

The policeman testified in substance that, after being on this particular assignment for an hour, for the first time, he had occasion to enter the store and on his way out spoke to a Mr. Nadel, the proprietor, when he observed this appellant motion with his hand toward a customer then in the place to come out and that he then walked over to the appellant, who was at the time doing picket duty, and said, " You got to cut this out or I'll take you in," and the defendant replied, " Who the hell are you to tell me what to do," to which the officer replied: " I will show you who I am, you are under arrest * * *. Whereupon seven or eight persons ran over to this man [appellant] and attempted to take him away from

me." Later in the record, the officer added that the defendant said: "You are a wise guy; who the hell are you to tell me what to do, I have been doing that for weeks." The officer admits he felt offended by this. No crowd collected until the arrest was made.

Ima Goodwill was called by the officer as a witness, claiming she was the one to whom the appellant had beckoned to come out of the store, but in her cross-examination she denied that she was such person. Her testimony is to the effect that she came down from the Bronx to shop and stopped in front of this store window, but at no time tried to enter the store; that she saw " a customer " to whom the defendant said, " Don't go in, there is a strike; " and that " the policeman came and arrested this man." At page 28 of the transcribed trial minutes this witness also testified: " I see people like to go into the store but she couldn't, he stand by the door." Counsel for the appellant on further cross-examination at page 31 of the record asked this witness: " Q. Didn't this man walk up and down, this way, [indicating] with a sign? " To which the witness answered: " No, he was standing before the store where the people go shopping. He was standing, the people can't go in the store, ' There is a strike, don't go in.' " He spoke to five or six people according to this witness.

Upon the testimony of the witness Goodwill, the magistrate probably drew the inference, and not without some show of reason, that the appellant stood at the entrance to the store and actually impeded or tended to interfere with the ingress of a customer. If this be the fact, there is no question in my mind about a *prima facie* case having been proven by the People. (See *Truax* v. *Corrigan*, 257 U. S. 312; *People* v. *Arko*, 199 N. Y. Supp. 402.) It may well be argued, however, that, on account of the apparent inability of this witness to speak our language with facility, she did not seem to say that there was such an interference with any one.

The defendant testified on his own behalf and called two witnesses who have been picketing at that place for eight weeks, and he said, in substance, that on this particular occasion he alone picketed and carried a sign on his shoulder with " English in front and Jewish in back, and we walked from one end of the store to the other end of the store, on the sidewalk near the curb where the premises are located." He denies that he abused anybody or used any rough or threatening language towards the police officer, and says he did nothing to cause a crowd to collect. The appellant testified that he saw the officer come on duty at about four o'clock that afternoon, enter the store, speak to the proprietor thereof, remain therein for about half an hour, during which period he timed the officer with a watch as he stood there. Then he adds the

officer came rushing out and, to use his own words, the officer " shakes me up, grabs hold of me, starts using slang language to me. He said: ' Oh you son of a bitch, if you don't walk over there, I will hit you over the head with the club, I am running this thing, don't get fresh to me.' " Concerning this, the officer has made an absolute denial, except that he admits he was in the store for about five minutes for personal reasons. The arrest followed. There is an absolute denial by the appellant that he at any time beckoned to any customer to come out of the store.

The magistrate, no doubt, spelled out of these words addressed to the policeman the alleged threatening, abusive and insulting behavior complained of. None were addressed to any person on the street or at any other place.

Nothing in the record shows the manner and appearance or the tone of voice of the appellant when it is claimed he spoke to the officer, whether there was any color of violence or disorder in this connection at all, or whether this was merely a conversational tone of speech directed to the officer. It is fair to assume that such talk would not tend to provoke a police officer to commit any disorderly act as suggested in the complaint. (*People* v. *Lukowsky*, 94 Misc. 500.) I quite agree that the form of speech is exceedingly impolite, discourteous, vulgar, and in very bad taste. Certainly there were no spoken words to other persons on the street or patrons of the place such as would lead them to believe that they were being threatened, insulted or abused.

With regard to the alleged interference with pedestrians, it is well here to quote Mr. Justice LEHMAN, who wrote the able opinion on behalf of the Court of Appeals in the case of *People* v. *Nixon* (248 N. Y. 182, at p. 185). That court said, regarding the defendants therein, who, it appears, had paraded four abreast on a twelve-foot wide sidewalk while picketing in a strike: " They were guilty, we may well concede, of atrociously bad manners, and they discommoded some other persons lawfully using the street, to the extent that a few pedestrians were caused to enter the roadway. There is no evidence that the persons discommoded showed any particular annoyance. Perhaps bad manners are too usual to evoke unusual irritation or annoyance. As yet bad manners have not been made punishable by imprisonment. The question presented here is whether the defendants' conduct went beyond mere bad manners and tended toward a breach of the peace." At pages 186–188 of 248 New York, Judge LEHMAN held that conduct, such as congregating and lingering upon the sidewalk, is not always " disorderly."

The proof here of the surrounding social and industrial con-

ditions, what evils or dangers existed if any, and other important facts from which to determine whether the picketing was peacefully conducted, is meager. Peaceful picketing is entirely lawful if carried on for a lawful purpose (*Mills* v. *United States Printing Co.*, 99 App. Div. 605; affd., 199 N. Y. 76; *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 id. 260); and I should say that, unless there is proof of conspiracy or boycott or other unlawful means to injure one in his business, inducing customers and others disposed to patronize or trade with another is not unfair or illegal. As the late Chief Justice TAFT said in the case of *Truax* v. *Corrigan* (*supra*, 327): " Plaintiffs' business is a property right (*Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443, 465) and free access for employees, owner and customers to his place of business is incident to such right. Intentional injury caused to either right or both by a conspiracy is a tort. Concert of action is a conspiracy if its object is unlawful or if the means used are unlawful. (*Pettibone* v. *United States*, 148 U. S. 197, 203; *Duplex Printing Press Co.* v. *Deering, supra.*) " The learned late chief justice then proceeds to consider whether the means used were illegal; and from what he wrote it may fairly be deduced and inferred that if the means employed constitute " lawful persuasion or inducing " and were " a mere appeal to the sympathetic aid of would-be customers by a simple statement of the fact of the strike and a request to withhold patronage " (pp. 327, 328), the means might be regarded lawful; but if " every customer or would-be customer " is compelled " to run the gauntlet of most uncomfortable publicity, aggressive and annoying importunity, libelous attacks and fear of injurious consequences, illegally inflicted, to his reputation and standing in the community," then the law is violated and the intervention of the courts would be warranted. And the late chief justice added, in view of the circumstances in the *Truax* case: " Violence could not have been more effective. It was moral coercion by illegal annoyance and obstruction and it thus was plainly a conspiracy."

No one has testified that any violence was used or even threatened here. To appeal peacefully to prospective customers not to patronize a particular business establishment while a strike is in progress, unless accompanied by circumstances tending to a breach of the public peace and good order, or some overt act in furtherance of an unlawful purpose, is fair and proper. Of course, the surrounding circumstances of each case should be given weight and value in determining a particular case as to what constitutes disorderly conduct reasonably tending to a breach of the peace (*People* v. *Nixon, supra*, 182, at p. 186); the place where, the manner in which and the tone of speech by which the solicitation and inducing is

done, are vitally important in all such cases under the penal statute, *supra* (see, also, *People* v. *Squires*, 135 Misc. 214), because, after all, to use a quotation of a distinguished jurist (BRANDEIS, J., *Truax* v. *Corrigan, supra*, dissenting opinion, p. 355), " It is of the nature of our law that it has dealt not with man in general, but with him in relationships " in this complex life of ours to-day. The test is what serves best the public interest and not the desires of any individual. There are differences and degrees as to time, place, manner, when and where, and how acts disorderly in their nature might tend to a breach of the public peace; these are the considerations which every record should disclose. (*People* v. *Phillips*, 245 N. Y. 401.)

A hard and fast rule though to fit all cases is not easy to define and apply. (*People* v. *Lipschitz*, 120 Misc. 633, 637, 638.) There is no particular code of phrases or language which would serve as a ready reference book or index for judicial guidance in all cases, except the English lexicon. The record is without a scintilla of evidence that any appeal to any one not to patronize the shoe store in question was brought to the attention of the owner of the place in any wise. In fact, although he was present at the trial, he was not called to testify.

The judgment of conviction should be reversed on the ground that the evidence is insufficient and a new trial granted.

On the whole case, there is, in my judgment, a strong conflict of evidence as to whether the offense of disorderly conduct was proven beyond a reasonable doubt, and irrespective of my opinion on this " conflict of fact as to details between the evidence of the respective parties," it is the law that the finding of the magistrate is conclusive; but this " court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against the law, or that justice requires a new trial." (See Code Crim. Proc. § 527, as amd. by Laws of 1924, chap. 607; *People* v. *Zounek*, 66 Hun, 626; 20 N. Y. Supp. 755; *People* v. *Lesser*, 76 Hun, 371. See, also, *People* v. *Wachtel*, 137 Misc. 205.)

McINERNEY, P. J. There is nothing in the record to show the alleged offense was committed in New York county. Waiving this question, the evidence is insufficient as a matter of law to sustain a conviction.

SALMON, J., concurs; FRESCHI, J., dissents from result and votes for a new trial.

Conviction reversed on law and facts; complaint dismissed and defendant discharged; fine returned.