THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* I. SILVAN GALPERN, Appellant.

(Argued January 11, 1932; decided June 1, 1932.)

*Raphael Galpern* and *I. Silvan Galpern* for appellant. The offense of disorderly conduct tending to a breach of the peace was not proven. (*People ex rel. Clark* v. *Keeper*, 176 N. Y. 465; *People* v. *Nixon*, 248 N. Y. 182; *People* v. *Arko*, 199 N. Y. Supp. 402; *People* v. *Fogel*, 167 App. Div. 550; *People* v. *Phillips*, 245 N. Y. 401; *People ex rel. Potter* v. *Board of Managers Wayside House*, 119 Misc. Rep. 428; *People ex rel. Frank* v. *Keeper*, 38 Misc. Rep. 233; *People* v. *Schroedeman*, 232 N. Y. Supp. 303.)

*Thomas C. T. Crain, District Attorney* (*Robert Daru* of counsel), for respondent. The conduct of the defendant was such as may have occasioned a breach of the peace, and regardless of intent to provoke a breach of the peace, it was a violation of section 722 of the Penal Law. (*People* v. *Nixon*, 248 N. Y. 182.) The judgment was proper under section 1459 of the New York City Consolidation Act (L. 1882, ch. 410). (*People* v. *Nixon*, 248 N. Y. 182; *Callan* v. *Wilson*, 127 U. S. 540; *Natal* v. *Louisiana*, 139 U. S. 621; *Steinert* v. *Sobey*, 14 App. Div. 505; *People ex rel. Parker* v. *Mother Superior*, 212 App. Div. 169; *People ex rel. Burke* v. *Fox*, 205 N. Y. 490; *People* v. *Loewendahl*, 178 N. Y. Supp. 55; *People* v. *Hovell*, 180 N. Y. Supp. 255; *Tenement House Department* v. *McDevitt*, 215 N. Y. 160; *People* v. *Fogel*, 167 App. Div. 550; *People* v. *Lipshitz*, 200 N. Y. Supp. 269; *Cohen* v. *Warden of Workhouse*, 150 N. Y. Supp. 596; *People* v. *Gertner*, 124 Misc. Rep. 114; *People* v. *Most*, 171 N. Y. 423.)

LEHMAN, J. The defendant was charged by a police officer with " using threatening, abusive and insulting behaviour, with intent to provoke a breach of the peace, and whereby a breach of the peace might be occasioned; that the said defendant did then and there obstruct the sidewalk with a number of unknown men and refused to move on when ordered." Although the magistrate found

that "the defendant used no threatening, abusive or insulting language" and "that his behaviour was not insulting or threatening, and he had no intent to provoke a breach of the peace," he, nevertheless, found the defendant guilty of disorderly conduct and suspended sentence.

The ground of the defendant's conviction, as stated by the magistrate, was that the defendant "obstructed the sidewalk with a number of other unknown men, and refused to move on when ordered by the police officer, and that the officer * * *, was acting within his rights in placing the defendant under arrest." The record shows that the arrest arose out of a dispute, conducted on each side quietly and without disorder, between a citizen, in this case a member of the bar, who asserted a right to stand upon the sidewalk of a street in quiet orderly conversation with a group of friends, and a police officer, who asserted a right to direct those who use the sidewalk to "move on" when in his opinion they were obstructing the sidewalk.

The defendant doubtless believed that the officer's direction to move on was arbitrary. Failure to obey was, we may assume, not intended as a defiance of the authority of the officer enforcing the law, but rather as a vindication of the rights of the individual against what the defendant believed was an arbitrary assertion of authority which the officer did not have.

Our liberties might be seriously threateneu if an individual could be punished for refusal to obey an order of a policeman or other officer of the State transcending his lawful authority. The Legislature has not so decreed. Police officers are not the final arbiters of the rights of citizens. The duty of police officers, it is true, is "not merely to arrest offenders but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions." (*People* v. *Nixon*, 248 N. Y. 182, 188.) Then they are called upon to determine both the occasion for

and the nature of such directions. Réasonable discretion must, in such matters, be left to them, and only when they exceed that discretion do they transcend their authority and depart from their duty. The assertion of the rights of the individual upon trivial occasions and in doubtful cases may be ill-advised and inopportune. Failure, even though conscientious, to obey directions of a police officer, not exceeding his authority, may interfere with the public order and lead to a breach of the peace. Then the Legislature may determine whether such conduct is " disorderly " and shall subject the individual to punishment.

The Legislature has defined the offense of disorderly conduct. The problem here presented is whether the defendant's conduct falls within such definition. The Legislature has recognized that, upon the streets and in public places of a populous city, conduct may be offensive and tend to create disorder though it might be inoffensive elsewhere. So, long ago, the Legislature provided that in the city of New York a person " shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city " commit certain specified offenses which would not be punishable if committed elsewhere. (New York City Consolidation Act, § 1458; L. 1882, ch. 410.) The defendant concededly has not committed any of these specified offenses, but it is urged that his conviction is justified under the next section of the Consolidation Act, which provides: " Whenever it shall appear, on oath of a credible witness before any police justice in said city and county, that any person in said city and county has been guilty of any such disorderly conduct as in the opinion of such magistrate tends to a breach of the peace, the said magistrate may cause the person so complained of to be brought before him to answer the said charge." (§ 1459.)

The question whether section 1459 was intended to be merely an administrative and auxiliary provision, enabling the courts to deal with offenses elsewhere defined (*People*

*ex rel. Potter* v. *Bd. of Managers, Wayside House,* 119 Misc. Rep. 428), or whether it was intended as an extension of other definitions of disorderly conduct (*People* v. *Lipschitz,* 120 Misc. Rep. 633), has not been authoritatively decided by this court. (*People* v. *Nixon, supra.*) There is authority of weight that, under its terms, " disorderly conduct " may constitute a penal offense though it does not fall within the legislative definition of other specified offenses and was not cognizable as an offense at common law. (*Case of the Twelve Commitments,* 19 Abb. Pr. 394; *People* v. *Mansi,* 129 App. Div. 386.) Certainly conduct, which is not otherwise prohibited by law, cannot, under the terms of that section, however construed, constitute a penal offense, without proof of circumstances which would form a logical basis for the " opinion " of the magistrate that it " tends to a breach of the peace."

The Legislature, perhaps because of the expressed doubt as to whether any conduct not included in the offenses defined and specified in section 1458 of the Consolidation Act could be punished as " disorderly conduct " under any other provision of law, enacted section 722 of the Penal Law (L. 1923, ch. 642). That section provides a new catalogue of acts which if committed in cities of five hundred thousand inhabitants or over " with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned " constitute guilt of " disorderly conduct " and are punishable as such. Though the Legislature specifically provided in that statute that other statutes were not thereby repealed, its enumeration of acts which may constitute disorderly conduct if thereby " a breach of the peace may be occasioned," left little if any scope for section 1459 of the Consolidation Act except as an administrative provision of law. (*People* v. *Nixon,* supra.) Included in that enumeration is " congregates with others on a public street and refuses to move on when ordered by the police." The defendant's conviction can be sustained, if at all, only under that subdivision.

Certainly the evidence shows that the defendant did "congregate" with five or six friends on a public street, even if he did so in an orderly and inoffensive way. They had been attending a meeting together, and some of them desired to enter a restaurant on East Fourteenth street. Before separating, they stood momentarily on the sidewalk at the entrance to the restaurant in social conversation. Their act was probably not unreasonable. At least so the defendant thought. It was near midnight on a summer evening. Other groups were standing nearby. Doubtless the sidewalk was then used mainly for recreation, yet it was the duty of the police officer to see that its use for pedestrian passage was not unreasonably obstructed. The evidence sustains a finding that the police officer's direction to these groups to move on was given in performance of that duty.

Even if we should find that the police officer's interference was unnecessary and in the circumstances ill-advised, we could not find that it was unauthorized. The defendant, knowing the character and standing of his group of friends and that they would not willingly annoy or offend others, might conclude that the interference was officious; the police officer without such knowledge might conclude that it was a useful precaution to avoid possible disturbance. The law authorized the officer to use his judgment. Friends may congregate on the sidewalk in an orderly group for a short conversation, without creating disorder or unduly offending or obstructing others, but they must "move on" when a police officer so directs for the purpose of avoiding possible disorder which otherwise might ensue. The Legislature has provided that failure to obey such direction in itself is disorderly conduct. That provision tends to preserve public order on the streets of a great city. A refusal to obey such an order can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in

any way to promote the public order. That is not the case here. The courts cannot weigh opposing considerations as to the wisdom of the police officer's directions when a police officer is called upon to decide whether the time has come in which some directions are called for.

The judgment should be affirmed.

POUND, Ch. J., CRANE, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., not sitting.*

Judgment affirmed.

* CARDOZO, Ch. J., heard the argument but resigned before the decision.