THE PEOPLE OF THE STATE OF NEW YORK on Complaint of JOHN KOESTER, Complainant, *v.* JACK ROZENSWEIG and Twelve Others, Defendants.

City Magistrates' Court of New York, Borough of Queens, Second District, July 6, 1939.

*Charles Sullivan, District Attorney [Michael McPhillips* of counsel], *Lord, Day & Lord [Thomas F. Daly* of counsel], for the complainant.

*Pinto & Marcantonio* and *Boudin, Cohn & Glickstein* [*Vera Boudin* of counsel], for the defendants.

HOCKERT, C. M. The defendants are charged with violation of subdivision 2 of section 722 of the Penal Law of the State of New York. The defendants, with a number of others, were parading on a sidewalk on the grounds of the New York World's Fair 1939, Incorporated, in front of premises occupied in part by the Exposition Grounds Catering Company who conducts a restaurant there under the name of "Brass Rail Restaurant." A number of these defendants wore white jerseys on which were stenciled in green letters "Brass Rail on Strike;" the others wore in the lapels of their coats a placard approximately three inches by three inches stating that the employees of the Brass Rail Restaurant were on strike. The defendants were walking three or four abreast, the distance of approximately five hundred feet on one street and two hundred feet on another street.

There is no testimony that they used insulting remarks, or conducted themselves in a manner which might tend to annoy persons in the vicinity. At the time that this was going on there were a large number of persons on the grounds of the fair. It is conceded that the defendants on entering the World's Fair grounds paid the usual price of admission and received admission tickets therefor and were on the premises legally. The World's Fair police asked the defendants to decease from picketing and remove themselves from the fair grounds and offered to refund to the defendants the price of their admission tickets. The defendants refused to stop picketing or to leave and refused to accept the refund of their admission ticket, whereupon the defendants were arrested by the World's Fair police.

The property where this took place is owned by the city of New York and has been leased to the New York World's Fair 1939 Incorporated, which is a membership corporation organized under the laws of the State of New York, which corporation has full charge of said premises and is empowered by the State of New York to have their own police force. The entire premises occupied by the fair is fenced in and no one is admitted except through entrance gates either on paying price of admission or by having an official pass.

It is my belief that if this picketing had been on a public thoroughfare instead of on the World's Fair grounds, there would be no disorderly conduct as the pickets were orderly and the picketing legal. The question therefor arises as to whether the defendants had the right to picket on the property leased by the New York World's Fair 1939 Incorporated.

There are few cases on this subject, in a recent one *Seagate Association* v. *Seagate Tenants Association* (168 Misc. 742), it was held that where the plaintiff sought an injunction against picketing, that the streets of Seagate were privately owned and rules of the Association prohibited picketing, the injunction was granted " because they disregarded the fact that it was not public rights which were involved but the rights of private owners in a private community with the right of reasonable restriction of the use of the private streets therein." As all of the property herein involved including the streets, etc., are occupied by the New York World's Fair 1939 Incorporated, it is in effect private property and all who enter thereon must comply with all proper rules and regulations. It has been urged that cases that allow picketing on park property of the city of New York in front of premises leased to private individuals, apply in this case. I do not believe that to be so because in each one of those cases the place where picketing was going on was accessible at all times to the public and no ticket or other admission was required and no other person or corporation except the city of New York or a subdivision thereof could make any rules or regulations as to the use. There are a whole line of cases following: *People ex rel. Burnham* v. *Flynn* (189 N. Y. 180) holding that the owner of a theatre has the right to revoke the entrance ticket of a purchaser and to remove him by force if necessary. In *People* v. *Galpern* (259 N. Y. 279), the Court of Appeals held that a person on a sidewalk in a public highway who refused to move on when ordered to do so by the police was properly convicted of disorderly conduct although there was no disorder of any kind. Upon the refusal to obey the order of the World's Fair police, the defendants could have been bodily evicted from the fair grounds and any suit for damages would be limited to recovery of the price of admission. The World's Fair police have the power of arrest and do not have to resort to eviction of the defendants.

The request of the World's Fair police was reasonable and as the court said in the *Galpern* case " a refusal to obey such order can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order."

It is, therefor, my opinion that the defendants are guilty of disorderly conduct in that upon being ordered to remove themselves from the premises occupied by the New York World's Fair 1939 Incorporated, refused to do so.