De Andrea, M.
The defendant is charged with coDimitting the offense of disorderly conduct in violation of subdivisions 2 and 3 of section 722 of the Penal Law, for the reason that at the time and place hereinafter fully described, the said defendant did unlawfully, and with intent to provoke a breach of the peace, and whereby a breach of the peace may be occasioned, did hold a public meeting at about 9:15 p.m., on the 7th day of June, 1939, on the easterly side of East 17th Street, about 50 feet south of Kings Highway, in the Borough of Brooklyn, New York City, same being a public street; did congregate with a large number of other persons, and did refuse to move on when ordered to do so by the complainant, a police officer of the City of New York, and that by Ms said actions and failure to move on the defendant interfered with the free use of the street and sidewalks by persons passing by.
The evidence submitted by the People showed that on the date, and at about the hour in question, the defendant was arrested wMle stationed on a stand or platform at the place afore-mentioned, addressing some 200 to 300 people, all of whom were congregated on the sidewalk; that before the meeting started the complainant informed the defendant that the commanding officer of the precinct, of which the place in question was a part, would not allow meetings to be held on any of the streets on Kings Highway between Ocean Avenue and Ocean Parkway; that other streets in the precinct were available, but not 17th Street, in view of its close proximity to Kings Highway, and directed the defendant to move on; that the defendant refused to do so and informed the police officer that the meeting was going to continue anyhow, and that the meeting was going to be held regardless of the order of the police captain, and of the complaining policeman.
The defendant did not dispute any of the foregoing evidence, nor was any evidence offered in contradiction thereof. The defendant contended, however, that assuming that all of the evidence were true, there was no violation of the law under the circumstances, but that on the contrary the action of the complainant, or his superior officer, by previous direction, or rule laid down by Mm in Ms official capacity, to bar a public meeting from any particular location, was capricious, arbitrary and unreasonable, and was an invasion and violation of the defendant’s constitutional rights of free speech and to conduct public meetings in the streets.
*273 In order to determine fairly and reasonably the issues raised in this case, it is necessary to have a detailed description of the physical surroundings of the place of the meeting, and of the immediate neighborhood, and for that purpose the complainant and defendant have agreed as follows: That East 17th Street is a borough highway running north and south with the direction of traffic going from south to north flowing into Kings Highway; that the street is approximately 45 feet wide from curb to curb, and if divided into lanes for automobile traffic there would be four in number; that the sidewalk from the building line to the curb is about 18 feet in width; that the place where the meeting was held is opposite the Kings Highway Community Building, in which there is housed a public library and a public meeting hall, but there is no evidence that a meeting therein was taking place; that there is also in the building a Temple of Religion, but there is no evidence to show that a congregation was there meeting; that in the evenings, along this street, especially from Kings Highway south to the next street, there is always a line of cars parked on either side of the street, at about the hour in question; that there is a subway station on Bangs Highway between East 15th Street and East 16th Street; that there is a moving picture theatre about one block away between East 17th Street and East 18th Street, so that automobilists driving to the theatre park their automobiles within a radius of a few blocks of the theatre, including the block in question, for want of a better, or a nearer, place to park; that at the hour in question both sides of East 17th Street, just south of Bangs Highway, were well lined up with parked cars; that such was the case not only on the night in question, but in fact every night, the evidence shows; that this situation would permit only two automobiles to pass with safety in the middle of the street because of the cars parked on either side; that each side of East 17th Street, between Kings Highway and the next street south, running parallel thereto, is lined up with buildings, all close together; that the block in question is approximately 200 feet long; that on the same block some of the buildings consist of apartment houses, two or three stories in height, together with other buildings of a similar nature. The block is well occupied with buildings and occupants thereof. The area is situated in one of the busiest sections in the precinct.
After due consideration of the foregoing facts, the description of the location of the occurrence of the incident, and of the particular time of the day, I am convinced that the policeman acted with reasonable discretion, and without caprice, in directing the defendant to move on, and to refrain from causing *274 a large gathering to collect. The place of occurence was, and is, in my opinion, a proper place for the police to give reasonable directions as shown. Same is a well-developed and improved area located in one of the most heavily trafficked sections of Brooklyn, both for vehicles and pedestrians, all induced by the attractive convenience of rapid transit, of the splendid business and amusement establishments along the particular section of Kings Highway, and of the residential accommodations of the streets intersecting same.
To anticipate undue inconvenience which the public may suffer through obstruction of traffic, or of the monopolization in the use of the sidewalks, at hours when traffic is heavy, is the duty of the police. In the performance of their duties, the police may, and, in fact, should, give reasonable directions for the safe and swift movement, and control, of traffic in the streets and on the sidewalks; the busier the area, the more directions and supervision are expected and required of them.
Reasonable discretion must, in such matters, be left to the police, and only when they abuse or exceed that discretion do they transcend their authority and depart from that duty. Failure, even though conscientious, to obey directions of a police officer, • may interfere with the public order and lead to a breach of the peace. It is not necessary, nor does the law contemplate, that the police must wait until a breach of the peace has actually occurred before they act; it is their duty to prevent such breach, since they are the guardians of the public order. At the scene of the congregation they might easily anticipate, or sense, the possibility of disorder. (See People v. Nixon, 248 N. Y. 182, 188; People v. Galpern, 259 N. Y. 279.)
The mere fact that a group gathered on the streets is peaceful in its aims and innocuous in its manner does not ipso facto eliminate it from a possible application of section 722 of the Penal Law. In a recent case, People v. Hippie (263 N. Y. 242, 243) the Court of Appeals reiterated its ruling in the Galpern case and said: “ We have given the language of Penal Law, section 722, a broad construction. A group of persons congregating on a public street may be dispersed, although their intent is orderly and inoffensive. Even then it may be said that ‘ a breach of the peace may be occasioned. ’ (People v. Galpern, 259 N. Y. 279, 283.) ”
Even though the testimony adduced at the instant trial shows that the meeting was orderly and that no obstruction was caused, there is still sufficient evidence to warrant a conviction *275 in that the defendant insisted on speaking after he was warned to cease. In People v. Galpern (supra), the court said (pp. 284-285): “ Friends may congregate on the sidewalk in an orderly group for a short conversation, without creating disorder or unduly offending or obstructing others, but they must ‘ move on ’ when a police officer so directs for the purpose of avoiding possible disorder which otherwise might ensue. The Legislature has provided that failure to obey such direction in itself is disorderly conduct. That provision tends to preserve public order on the streets of a great city. A refusal to obey such an order can be justified only where the circumstances show conclusively that the police officer’s direction was purely arbitrary and was not calculated in any way to promote the public order. That is not the case here. The courts cannot weigh opposing considerations as to the wisdom of the police officer’s directions when a police officer is called upon to decide whether the time has come in which some directions are called for.”
The right to conduct a street meeting is not absolute and is not guaranteed by the Constitution. In People ex rel. Doyle v. Atwell (232 N. Y. 96), the constitutionality of an ordinance of the City of Mt. Vernon which prohibited public meetings on the street unless a permit was first obtained from the Mayor was upheld. The defendants were arrested for addressing a meeting without any permit. The court said (pp. 100-102): “ Public meetings and assemblages held on the streets tend to obstruct the streets and destroy in a measure the very purpose for which they have been dedicated. * * The people have many constitutional rights, the exercise of which on the public streets may be prohibited. While there is a constitutional right of free speech, there is no constitutional privilege to exercise this right on the public streets in the form of there holding a public meeting. * * * The right to grant or withhold a permit carried with it the exercise of discretion in the discharge of a public duty. The mayor, in passing upon an application, had to take into consideration the public safety as well as the public convenience. This involved, among other things, the place where the proposed meeting was to be held, the congestion in the street at that point, and the possible disturbance which the meeting might occasion.”
Thus is removed the popular misconception shared by many that there is an absolute constitutional right to conduct public meetings in the streets. In People v. Smith (263 N. Y. 255, 257), in sustaining the right of the city to require a permit of an expounder of atheism pursuant to a provision in the Code *276 of Ordinances of the City of New York, the court said: “ This ordinance is not aimed against free speech. It is directed towards the manner in which the street may be used. (Commonwealth v. Davis, 162 Mass. 510; affd., 167 U. S. 43.) The legislative power might forbid public meetings and speaking in the streets entirely. It may limit the use of the streets to certain purposes.”
The recent decisions of the Supreme Court of the United States in the Hague case (Hague v. Committee for Ind. Organization, 307 U. S. 496) must be regarded as the leading exposition on the subject of free speech. Nowhere did the court hold that the right to speak on the street was supreme and incapable 'of limitation. On the contrary the decision, while upholding civil liberties in general, nevertheless held that the right to speak on the streets was not unlimited. Mr. Justice Roberts said (pp. 515-516): “ "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views ón national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.”
The court in holding a Jersey City ordinance that required a permit from the director of safety to conduct a public meeting to be void, held that ‘ It does not make comfort or convenience in the use of the streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent ‘riots, disturbances, or disorderly assemblage.’”
The facts in the Hague case are completely devoid of any similarity to the facts at bar. There is absent herein any endeavor to prohibit all public meetings no matter where held. Here we have a measure to restrict meetings from being held in an area that is heavily trafficked and highly developed. There are sufficient streets in the neighborhood, less congested, that could be readily used for holding public meetings and the use of which has been offered to all groups contemplating public meetings.
*277 The uncontradicted testimony reveals that the defendant congregated with others on a public street and refused to obey the patrolman’s order to discontinue the meeting and to move on. There is no evidence that such order was arbitrary, but, on the contrary, it was reasonable and fair.
The defendant is guilty as charged.