THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CARL KUNZ, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Mid-Manhattan Court, February 18, 1954.

*Francis McDermott* for plaintiff.

*J. Roland Sala* for defendant.

DEL GIORNO, M. The defendant is charged with the offense of disorderly conduct, under subdivision 2 of section 722 of the Penal Law of the State of New York, in that with intent to provoke a breach of the peace and under circumstances whereby a breach of the peace might be occasioned, he " did obstruct the sidewalk and roadway thereat (the Southwest corner of Broadway and 45th Street) to the annoyance of and interference of pedestrians, operators of vehicles, businessmen, and residents of hotels and apartments in the area, and also patrons of theatres in the area; and did refuse to move on when ordered to do so by deponent (police officer Joseph J. O'Brien)."

The alleged violation occurred at about 10:45 P.M. on Saturday, October 19, 1953.

The facts show that the police department had allocated the corner in question to the defendant for his religious meetings after a conference with inspector Louis Goldberg.

Police inspector Louis Goldberg, then in command of the third division, which included the sixteenth precinct covering the location involved, had, subsequent to a conference with the defendant and other preachers, issued an order dated October 25, 1952, which was read to the police in his command. This order was marked in evidence as People's exhibit No. 1, and was acknowledged by the inspector at the trial.

In the above order he advised the police that the defendant, among others, had been given permission to hold these meetings at 45th Street and Broadway every Saturday night. The pertinent provisions of the order were: They (those holding religious meetings) were directed to render proper co-operation to the police by not obstructing traffic and to move from the corner of Broadway a safe distance so as to prevent congestion and not to interfere with pedestrian or vehicular traffic. Persons holding religious meetings will not be interfered with or inconvenienced unnecessarily. They will be authorized to exercise the privilege granted by the Constitution pertaining to religious meetings. Proper instructions will be issued by precinct commander to members of the force under his jurisdiction with a view to seeing that instructions herein contained are properly complied with and that persons preaching religion of any denomination will and must be afforded courtesy and respect.

The principal testimony on behalf of the People was given by officer O'Brien who was on traffic duty at the intersection in question.

O'Brien testified that he was aware that the defendant and the cospeakers who preached under his direction had received police permission to preach the gospel at the corner in question. He testified further that the speakers had attracted an ever-increasing number of listeners which by 10:45 P.M. amounted to about 300.

In continuing his testimony, O'Brien said that the defendant first stationed himself at the northerly part of the roadway of 45th Street about fifteen to twenty feet from the westerly side of Broadway. Then, as the crowd grew larger he kept shifting his position in the roadway to the south and about in line with the building line of Broadway until he was some ten feet north of the southerly curb of 45th Street. The crowd, following the defendant, overflowed into the roadway with an admitted consequent impediment to the movement of traffic. The defendant's meeting continued to interfere with pedestrian as well as vehicular traffic, for about one and one-half hours until the time of the arrest, when defendant's gathering prevented traffic altogether from going through 45th Street.

The officer added that he requested the defendant on at least three occasions to move close to the northerly curb and allow traffic to flow. He stated in substance, that the defendant refused to move, asserting that he had been given permission to preach there and asserting further that it was the officer's duty to get the crowd upon the sidewalk or close to it. The

officer then testified that it was upon this refusal to move that he arrested the defendant.

The defense was substantially to the effect that the defendant was preaching the gospel, that he was at that corner by police agreement and permission, that he was not responsible for the conditions which ensued, and that he was not obligated to move under the circumstances prevailing there at that time.

In substantiation of his contention, the defendant and his principal witnesses testified that four of them had preceded the defendant in preaching to the crowd under his direction. The gist of the defense was that on this occasion, as on so many more previously, they spoke to the crowd from the roadway; at the farthest they or the defendant were about six feet south of the northerly curb of 45th Street when each spoke; traffic was " impeded " but never stopped (defendant Kunz himself testified that traffic moved freely at all times) ; the officer approached defendant Kunz as many as seven times always asking him to move from his position in the roadway; Kunz refused to do anything about it relying on the granted permission to preach there.

The defendant further testified that he and his coworkers distributed religious pamphlets to the public during the one and one-half hour they were at the corner, free of charge, and took no collection.

The question to be answered is whether this is a case of disorderly conduct within the meaning of section 722 of the Penal Law, or a case of unnecessary interference on the part of a police officer with one exercising his constitutional right to freedom of speech and freedom to preach religion.

Patently, the right given to the defendant to preach has inherent in it the ability to attract any number of persons. Such ability is not to be discouraged. Rather it is to be encouraged. Whether one agrees with the religious concepts of the speaker or not, from a constitutional viewpoint, it is important that one concede to him the right to express his own belief.

Moreover, inasmuch as the police had assigned to the defendant the privilege of speaking at the corner of 45th Street and Broadway, a certain amount of confusion among the listeners was to be reasonably expected at that corner in the course of the meeting.

It is my view that if such meetings are to be permitted at busy corners, such as the one involved, it must be understood that primarily it is the responsibility of the police department

to afford police protection to the meeting and police guidance to the passersby.

It must be made clear, nevertheless, that the defendant knew what co-operation he was reasonably expected to give under the circumstances. His was the largest audience on the evening in question — about 300 persons by the police officer's testimony, and about 100 or thereabout by his own testimony. The listeners were in the roadway as well as on the sidewalk. Thus, at the very least, they impeded traffic going westerly across 45th Street and up and down on Broadway. There is strong evidence showing that at one time traffic was completely halted.

The defendant's contention that the frequent approaches of the police officer were responsible for the unusual increase of the crowd, even if accepted, did not lessen his duty to respect a lawful order. It is possible that some of the curious were attracted by the patrolman's shuttling between his post in the middle of the intersection and the defendant. But, in my opinion, the primary cause of the confusion at the interesection and the impediment to traffic there was the crowd's following the defendant into the roadway, and the admitted refusal of the defendant to render any co-operation to the police officer. The directions given by the officer were reasonable and within the scope of his own obligation to maintain a free flow of traffic. Those directions should have been obeyed. (*People* v. *Nixon,* 248 N. Y. 182.)

In my opinion, the religious freedom demanded by and conceded to the defendant implied the legal as well as the ethical obligation on his part to hold these meetings within a reasonable distance of the northerly curb of 45th Street so as not to interfere with traffic thereat.

Furthermore, the right to preach is not absolute. It is relative and must be subordinate to the public good. The public has a right to cross intersections and travel through the streets on foot or in vehicles. This right is superior to the right of the defendant to preach under the circumstances described. While the defendant is not expected to act as a police officer, he does have the obligation to see to it that the crowd which he attracts will not become a danger to the general public. Complementarily a police officer has the obligation to see that the use of the street for traffic is not unnecessarily obstructed. (*Cox* v. *New Hampshire,* 312 U. S. 569; *People* v. *Galpern,* 259 N. Y. 279, 284.)

In the *Galpern* case, the court said, '' Even if we should find that the police officer's interference was unnecessary and in the circumstances ill-advised, we could not find that it was unau-

thorized." In the *Cox* case, the court held that civil liberties, as guaranteed by the Constitution, imply the existences of an organized society maintaining public order, without which liberty itself would be lost in the excess of unrestrained abuses.

From close observation of the witnesses, I disagree completely with the defendant's contention that the police officer acted in a spirit of intolerance. The answer to such contention is found in *People* v. *Feiner* (300 N. Y. 391, 401), where the court said: " In the instant case, there is no indication that the action of the police officer was taken as a subterfuge or excuse for suppression of defendant's views and opinions." It is my opinion that the officer was motivated solely by a proper concern for the preservation of order and the protection of the general welfare in the face of an actual interference with traffic.

Accordingly, I conclude that the defendant violated section 722 of the Penal Law. Although he is charged with violating subdivision 2 thereof, I nevertheless hold that the defendant's refusal to move when ordered to do so by the police officer, under the circumstances, constituted disorderly conduct under subdivision 3 of section 722 of the Penal Law.

The fact that subdivision 3 is not mentioned in the complaint does not prevent the People from proving a violation of this subdivision. Since the proof is under section 722 of the Penal Law, the facts may be applied to any subdivision thereof if the proof shows that such conduct would tend to a breach of the peace as defined in that section. (*People* v. *Hipple,* 263 N. Y. 242.)

The court finds, therefore, that the defendant is guilty of disorderly conduct, and imposes a suspended sentence with the admonition that the defendant can best advance the cause of freedom of speech and religion by recognizing his own obligation of reasonable co-operation with the guardians of law and order.