# Richmond

### Ruth E. Tinsley v. City of Richmond.

April 24, 1961.

Record No. 5232.

Present, All the Justices.

The opinion states the case.

*Martin A. Martin*, for the plaintiff in error.

*James A. Eichner, Assistant City Attorney (J. E. Drinard, City Attorney*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Ruth E. Tinsley was arrested on a warrant which contained the charge that she did on the 23rd day of February, 1960, "unlawfully refuse to move on when told to do so by Police Officer D. L. Nuckols in violation of Section 24-17 of the City Code." Richmond City Code, 1957, Section 24-17. Upon her trial in the court below, without a jury, she was found guilty and her punishment was fixed at a fine of $10.00. She sought, and was granted, a writ of error to the judgment of conviction.

The defendant has assigned a number of errors which attack the constitutionality and validity of the ordinance under which she was arrested, tried and convicted. She also contends that the evidence presented against her was insufficient to sustain her conviction.

The material facts in the case are not in dispute.

On February 23rd, 1960, Thalhimer's Department Store, located in a block bounded by Sixth, Seventh, Broad and Grace Streets, in the City of Richmond, was being picketed by large numbers of

persons who were carrying placards, and who were circling the store on the sidewalks adjacent thereto. In addition to the pickets, large crowds were on the sidewalks. Demonstrations of a similar nature had taken place previously in the same area, and some students taking part in the demonstrations had been arrested.

A number of police officers, some in uniform, and some not, had been assigned to the area. They had been instructed by their superiors to keep everyone moving on the sidewalks, and in compliance with these orders the pickets, onlookers, and even the police officers not in uniform, were directed to keep moving. Two of the officers, Lt. L. H. Griffin and Patrolman D. L. Nuckols, testified that these actions were taken to keep the sidewalk open for pedestrian traffic and to avoid disorder.

Persons waiting for buses at a bus stop were required to move to a position, in line, near the curb.

A newsboy, selling newspapers on a corner of the block, was required by the police officers to move on, but was later permitted to return when the newspaper company by whom he was employed intervened with the police in his behalf.

Defendant, on this date, was on her way to Thalhimer's to pay a bill she owed there, and then planned to wait outside the store to meet a friend. As she neared the store, someone gave her a handbill which contained an admonition against dealing at Thalhimer's, so she decided not to go into the store to pay her bill, but instead to wait for her friend outside the store building, at the corner of Sixth and Broad Streets.

Defendant saw the pickets and the large crowds of people on the sidewalks.

She was standing against the window of the store when Officer Nuckols, in full uniform, approached her and asked her to move on. She asked him why she had to move. Again the officer asked her to move. She then pointed out to him some other people who were not moving and again asked him why she had to move. The officer said he hadn't yet gotten to the other people and then ordered her to move. She refused, and the officer arrested her on the charge set forth in the warrant.

The ordinance in question, Section 24-17 of the Code of the City of Richmond, is as follows:

"Any person loitering or standing on the street, sidewalk or curb, shall move on or separate when required to do so by any member of

the Police Bureau and shall cease to occupy such position on the street, sidewalk or curb."

Defendant contends that the ordinance is unconstitutional in that:

1. It is an unlawful delegation of legislative power, because it fails to prescribe standards to guide the conduct of the members of the Police Bureau.

2. It is vague and ambiguous.

These two contentions will be dealt with together, since the arguments advanced by defendant in support of her first contention would, if valid, apply to her second contention, and vice versa.

We recognize the constitutional prohibition that ordinarily, in a statute or ordinance, a legislative body cannot delegate to administrative officers an exercise of discretionary power, without providing a uniform rule of action to guide such officers. We have, however, also recognized a well established exception to this rule. This exception applies in instances where it is difficult or impracticable to lay down a definite or comprehensive rule, or where the discretion relates to the administration of a police regulation and is essential to the public morals, health, safety and welfare.

It is our opinion that in the enactment of the ordinance, the city has validly exercised the powers given it under its charter, and has not unlawfully delegated its legislative power.

Section 2.04 of the charter grants to the City Council the power to adopt ordinances "for the preservation of the safety, health, peace, good order, comfort, convenience, morals and welfare of its inhabitants," and for the "prevention of conduct in the streets dangerous to the public" (Acts of Assembly 1948, p. 183).

In the exercise of these powers the City Council adopted Section 24-17 of the City Code of 1957. It should be noted that the ordinance now in dispute was first adopted in 1909 and has been re-enacted in the various city codes since that time, pursuant to previously existing charter authority.

The ordinance in question is of a regulatory nature and is designed to preserve the safety, peace, good order and convenience of the inhabitants of the City, and to prevent conduct in the streets dangerous to the public.

In order to carry out the purposes for which such a regulatory ordinance is adopted, the legislative body may place in the hands of the officers responsible for its enforcement, such discretion as is

reasonable and proper to promote public peace and order. Moreover, it would be impossible, in such a case, to delineate in the ordinance itself, each circumstance which would be sufficient to warrant action by such officers. Under these conditions, the failure to set out a specific standard of conduct in the ordinance does not render the ordinance void.

This court has recognized this principle in the case of *Taylor* v. *Smith*, 140 Va. 217, 124 S. E. 259, where we said:

"We are of the opinion that a city may, in the execution of its police power, invest its administrative and executive officers with a reasonable discretion in the performance of duties devolved upon them to that end, whenever it is necessary for the safety and welfare of the public. Such a discretion is neither arbitrary nor capricious." (140 Va., at pages 231, 232).

The court also quoted, with approval, the following from 12 A. L. R. 1435:

"It is also well settled that it is not always necessary that the statutes and ordinances prescribe a specific rule of action, but on the other hand, some situations require the vesting of some discretion in public officials, as for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the regulation relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare."

We have previously upheld the validity of an ordinance similar to the one in question here, in the case of *Benson* v. *City of Norfolk*, 163 Va. 1037, 177 S. E. 222.

In the *Benson* case the City of Norfolk had, in 1907, in exercise of charter powers similar to those held by the City of Richmond, enacted the following ordinance:

"Sec. 483. Authority of police to require persons on street to move on.

"Any person or persons, vending or hawking goods, wares or merchandise, or loitering or standing on any of the streets or ways of the City, shall when required so to do by any member of the police force, move on, or any group of persons standing shall separate and move on, and cease to occupy such position on the street or way, under penalty of not less than three nor more than fifty dollars for each offense, and in addition, in the discretion of the Police Justice, may be confined in jail not exceeding thirty days."

Benson assailed the constitutionality of the Norfolk ordinance on

the grounds, among others not applicable here, that it constituted an unlawful delegation of legislative power in that it failed to lay down rules for the conduct of the police officers in enforcing the ordinance.

We said in the *Benson* case:

"The general power to regulate the use of the streets, and to do all things necessary or expedient for promoting the general welfare and peace of its inhabitants, and to make and enforce all ordinances would certainly seem to warrant the enactment of the ordinance in question. (163 Va., at page 1039).

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"It is, in our opinion, most salutary that the police officers of a municipality should have reasonable authority and discretion. Indeed, in exigencies, it is vital to the welfare of the community.

"Courts should assume, initially, that they will exercise their discretion and authority in a fair and reasonable way." (163 Va., at page 1040).

We re-adopt these views and hold them to be controlling in the case now before us.

Legislative enactments of a similar nature have come under review in the courts of other jurisdictions. While there is a division of authority on the question of the validity of such regulations (See 25 Am.Jur., Highways, Section 189, pp. 488, 489 and 65 ALR 2d, p. 1152) we adhere to our holding in *Benson* v. *City of Norfolk, supra*, that they are valid.

Typical of the cases approving such regulations is *People* v. *Galpern*, 259 N. Y. 279, 181 N.E. 572, in which the Court of Appeals of New York had under examination section 722 of the Penal Law (Laws 1923, c.642, as amended by Laws 1924, c.476) which provided that in cities of 500,000 inhabitants or more, it would constitute disorderly conduct if a person "congregates with others on a public street and refuses to move on when ordered by the police."

Galpern was standing on a sidewalk with five or six friends, in an orderly and inoffensive way. There were no other circumstances surrounding the incident. A police officer ordered the members of the group to move on, and Galpern refused to do so, and was arrested and charged with disorderly conduct. His conviction was upheld, and the Court said in its opinion:

"A refusal to obey such an order can be justified only where the circumstances show conclusively that the police officer's direction

was purely arbitrary and was not calculated in any way to promote the public order. That is not the case here." (181 N. E., at page 574).

See also *State* v. *Sugarman*, 126 Minn. 477, 148 N. W. 466; *City of Tacoma* v. *Roe*, 190 Wash. 444, 68 P. 2d 1028.

In the *Galpern* case, as has been noted, the regulation required that a person had to congregate with others before an order to move on could be given. In the *Sugarman* case, three or more persons had to be assembled before such an order would be warranted. But in the *Roe* case, as with the ordinance now before us, a person standing alone on the street or sidewalk could be ordered to move on. Although these regulations differ in these respects, it will be seen from a reading of all of them that a common purpose is sought to be achieved—a free and unobstructed passage of the street or sidewalk. In each regulation the offense consists of standing on the street or sidewalk, and the person's obligation to move on is conditioned upon a warning by a police officer to so move. The regulation has been upheld even though only one person of a group refused to move on and was arrested because he did not comply. The fact that such a regulation may be operative when a person is standing alone does not render the regulation void. The important consideration is whether the regulation is designed to afford free and unobstructed passage of the street or sidewalk for the preservation of public order, and the controlling factor in each arrest is whether or not the officer authorized to enforce the regulation has acted arbitrarily.

The test as to whether there has been a reasonable and proper exercise of the authority given the enforcing officers by the statute or ordinance is a matter for judicial determination, and depends upon the circumstances surrounding each arrest. If, upon judicial review, it appears that the police officer has acted arbitrarily, it is the duty of the courts to acquit the alleged offender. On the other hand, if the officer has acted reasonably to promote the public welfare and peace, his actions must be upheld.

In this case, where, at the time of the arrest, picketing of a highly controversial nature was taking place, crowds of people were on the sidewalks, some friendly and some hostile to the pickets, and tensions ran high, it was imperative that order be maintained, and that there be a "prevention of conduct in the streets dangerous to the public." (Richmond City Charter § 2.04.) Under these circumstances, when the police officer invoked the ordinance in question

against the defendant, we cannot say that he acted arbitrarily. The facts fully justify the action taken by him.

■ Defendant complains that the ordinance is so vague and ambiguous as to render it unconstitutional and void.

The test of statutory definiteness has been laid down in the case of *Standard Oil Co.* v. *Commonwealth*, 131 Va. 830, 833, 109 S. E. 316, that "an ordinance of a regulatory nature must be clear, certain and definite, so that the average man may, with due care, after reading the same, understand whether he will incur a penalty for his action or not, and if not of this character it is void for uncertainty."

We think the ordinance in question amply meets this test, and is not unconstitutional and void for the reason assigned.

■ The defendant, in her argument that the ordinance is vague and ambiguous seems also to assert that the facts surrounding her arrest show that she was denied due process of law and the equal protection of the laws guaranteed to her under the Constitution of the United States and Section 11 of the Constitution of Virginia. She cites, as the basis for this assertion, the fact that the newspaper boy was permitted to return to the corner and was not again required to move on, while she was arrested. She states that this proves that the police officer discriminated against her in arresting her. Although this objection was not stated, assigned or presented as required by Rules of Court 1:8, 5:1 § 4 and 5:12 § 1 (d), the answer to the objection is simply that nothing appears from the ordinance itself or from the evidence presented in the trial court to show any discriminatory action in this case.

■ Finally, defendant contends that the evidence was not sufficient to support her conviction.

When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the prosecution, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless "it appears from the evidence that such judgment is plainly wrong or without evidence to support it." § 8-491, Code, 1950; *Crisman* v. *Commonwealth*, 197 Va. 17, 87 S. E. 2d 796; *Toler* v. *Commonwealth*, 188 Va. 774, 51 S. E. 2d 210.

We think the evidence is sufficient to support the judgment of the trial court, and that the judgment is plainly right. Defendant knew that a demonstration was taking place in the block where she was standing; she had notice of it from the handbill which had been

given her, and she respected its admonition to the extent that she deviated from her purpose to go into the store to pay her bill. She saw the pickets and their placards; she saw the large crowds; she knew that students, who had taken part in the demonstrations, had been arrested. She deliberately placed herself in an emotion-packed situation, where at any moment trouble could have erupted, causing danger to the defendant and to the others on the sidewalk. She was told three times by a uniformed officer to move on; when she refused her offense was complete.

The police officer was under no obligation to stand and argue with the defendant. To have done so would have defeated the very purpose of the ordinance and the reason for keeping everyone moving—the maintenance of order. Under the circumstances, the officer was called upon to act with dispatch and firmness. Since he did not act arbitrarily, it is no defense to say that he should have acted more judiciously. As was said in the *Galpern* case, *supra:*

"The courts cannot weigh opposing considerations as to the wisdom of the police officer's directions when a police officer is called upon to decide whether the time has come in which some directions are called for." (181 N.E., at page 574).

The defendant has been convicted under a valid ordinance by competent and sufficient evidence. The judgment of conviction is therefore

*Affirmed.*