City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. Robert Williams, Sr., Defendant-Appellant.

City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. Robert Williams, Jr., Defendant-Appellant.

City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. Isaiah Major, Defendant-Appellant.

### Gen. No. 48,767.

First District, First Division.

December 31, 1963.

---

[1] Article by Henry H. Foster, Jr., Professor of Law at the University of Pittsburgh School of Law.

Jason Ernest Bellows, of Chicago (Bellows, Bellows & Magidson, of counsel), for appellants.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

After a nonjury trial defendants were found guilty of violating the City's disorderly conduct ordinance on complaints signed by the arresting officer.[1]

---

[1] The ordinance, in pertinent part, reads as follows: "All persons who shall make, aid, countenance, or assist in making any improper noise, riot, disturbance, breach of peace, or diversion, tending to a breach of the peace within the limits of the city; . . . shall be deemed guilty of disorderly conduct, and upon conviction thereof, shall be fined not less than one dollar nor more

 From separate judgments imposing fines of $3 and costs of $2 on each defendant, a consolidated appeal was taken to the Supreme Court of Illinois, which determined that no constitutional question was involved. On transfer to this court, the only remaining issue is whether the evidence is sufficient to sustain the judgments.[2]

The testimony of the arresting officer, accepted almost entirely as correct by defendants in this court, showed that the officer was at the building of the Chicago Defender newspaper, 2400 S. Michigan Avenue, at 8:30 a. m. on May 10, 1961. Forty to forty-five persons were picketing on a 6-foot-wide sidewalk along a frontage of 25 feet. The officer, a sergeant, had asked the pickets to form a line using only part of the public sidewalk, and all but defendants complied. While half of the pickets were walking north, the others marched south, forming an endless chain, and, thus, solidly utilizing approximately half of the sidewalk.

The three defendants, however, were walking outside the regular picket line, two abreast and the other just behind, parallel with the street, so that where they were the sidewalk was completely blocked.

After advising defendants that he was a police officer, the sergeant told them that they were blocking the sidewalk and should move aside to where the other pickets were walking. One defendant protested

---

than two hundred dollars for each offense." Municipal Code of Chicago, Ch 193, § 193.1.

[2] Since the proceeding is quasi-criminal, it is to be tried and reviewed as a civil case (City of Chicago v. Terminiello, 400 Ill 23, 79 NE2d 38), and the City's burden of proof is to establish violation of the ordinance by a clear preponderance of the evidence. (City of Chicago v. Lewis, 28 Ill App2d 189, 171 NE2d 70; United States v. Regan, 232 US 37, 47; City of Chicago v. Carney, 34 Ill App2d 303, 305, 180 NE2d 729.)

that he had a right to walk up and down the sidewalk. The officer repeated his direction. Another defendant was asked to stop making noise. By his own testimony, he had been making "Loud talk . . . to nobody. Just saying, 'Hey, hey.' Singing a song." He did move into the street and become quiet for a while but then joined the other two and resumed his singing, walking with the other defendants on the sidewalk outside the picket line. The three defendants were then arrested.

Although no violence or explicit threat of violence occurred, the testimony of the police officer and one of the defendants established that at least one member of the general public had been present and apparently had proceeded into the building. Whether the progress of other persons was impeded is a matter of dispute. ■ ■ The defense is that no person was coming along the sidewalk so that no disturbance had occurred or was imminent, and that, therefore, the arrests were arbitrary. Under the ordinance, however, the police need not wait for the occurrence of an actual breach of peace before taking action. The ordinance specifically provides for anticipation of a breach, by including in the definition of the offense a "diversion, tending to a breach of peace."

Here was a tense scene with a high concentration of men—one for each 1⅔ square feet on the half of the sidewalk they were using. It was appropriate and desirable that an officer be assigned to police the situation. His purpose was not to prevent picketing but to regulate it. The effect of his presence, therefore, would be a furtherance of the legitimate aims of the picketers by preserving the opportunity to picket, as well as a protection from violence to all persons, including the picketers, and a maintenance of the public's access to the sidewalk. We believe that his order to keep a passageway clear was a reasonable police

measure. Thus, the noncompliance constituted a diversion which, under the circumstances of the strike, might well have provoked a breach of the peace.

In addition to the potential violence of a clash between the three defendants and passers-by, an obvious danger lay in the prospect of encouragement to other picketers to disregard the police officer's direction and mill about on the sidewalk, once his authority was shown to have been ineffectual. While every refusal to comply might not amount to disorderly conduct, we feel that in this particular situation the disobedience could reasonably be considered inflammatory.

In the absence of Illinois decisions precisely in point, both parties have cited and sought to distinguish certain cases from other jurisdictions. People v. Galpern, 259 NY 279, 181 NE 572; Tinsley v. City of Richmond, 202 Va 707, 119 SE2d 488; People v. Carcel, 3 NY2d 327, 144 NE2d 81. We see no point in discussing these decisions in detail as they involve different facts and somewhat different law. In New York there is a statute covering disorderly conduct which provides, in part, that it shall constitute an offense if a person, congregated with others on a public street, refuses to move on when so ordered by the police. Our ordinance has no such specific provision, but we consider the difference to be of no consequence. The New York cases have held that there is no obligation to obey such a police order if it is arbitrary and unreasonable. Yet if it is reasonable and not arbitrary under the existing circumstances, we have no doubt that a Chicago policeman's order to move on must be obeyed just as explicitly as though it were found in statute or ordinance.

In fact, we do have a statute authorizing municipal corporation authorities to "prevent" disturbances, disorderly assemblies, etc. (Ill Rev Stats, c 24, § 11–5–2.)

331

And we do have an ordinance which prescribes that a police officer has the duty to "preserve" order, peace, quiet, etc. (Municipal Code of Chicago, Sec 11–24.) These, together with the disorderly conduct ordinance, are sufficient authority to support the action taken by the officer in the case at bar.

We cannot say that the convictions for disorderly conduct were contrary to the manifest weight of the evidence. The judgments of the Municipal Court are, therefore, affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.