Ormand N. Gale, J.
Tills is an appeal from a City Court conviction of one Kenneth Baer for violation of subdivision 2 of section 722 of the New York Penal Law and section 38-a of chapter 16 of article 11 of the Revised General Ordinances of the City of Syracuse. There are three grounds urged on this appeal.
The court erred in not sustaining a demurrer to the information charging a violation of the City Ordinance on the ground that the ordinance was unconstitutional. The defense relies very heavily on the case of People v. Diaz (4 N Y 2d 469). Therefore, since the Court of Appeals in that case held that a Dunkirk City Ordinance was unconstitutional in that the language was too vague, indefinite and uncertain to define a crime, the language of that ordinance should be compared with the ordinance in the case at bar. The section under attack in the Dunkirk Ordinance provides: “No person shall lounge or loiter about any street or street corner in the city of Dunkirk.” The Court of Appeals struck down the Dunkirk Ordinance on the ground it ‘ makes no distinction between conduct calculated to harm and that which is essentially innocent.” (People v. Dias, supra, p. 471.)
The court also stated that (p. 471) a statute was upheld when the term loiter was coupled with a prohibited act, in order to give significance to the word loiter. ‘ ‘ ‘ Any person * * * with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned * * * congregates with others on a public street and refuses to move ’ ” was used as an example of a valid provision. (Emphasis supplied.)
The Syracuse Ordinance provides: “no person shall loiter in or around public buildings or obstruct corridors, stairways ox-doorways, so as to prevent free access by members of the public, officers or employees. No person shall by his presence or by means either alone or in consort with others interfere with *359 or interrupt the conduct of business in the offices located in any such buildings.” (Emphasis supplied.)
This statute does not, as in the Dunkirk Ordinance, provide that no person shall lounge in or loiter about any public building. Loiter “is coupled with prohibitive conduct,” namely, preventing free access of corridors, stairways or doorways, and interfering with or interrupting the conduct of business. There should be no difficulty with the word “ loiter ”. “ Loitering is a word in common usage, whose meaning is well understood” (People v. Bell, 306 N. Y. 110,113). The language is not such as can be said not to distinguish “between conduct calculated to harm and that which is essentially innocent.” A person who prevented free access or interrupted or interfered with the conduct of business would not be doing so innocently, whereas, a person who has business in the building could freely come and go or wait and would not violate the statute.
As the Court of Appeals pointed out in People v. Bell, p. 113 (supra) public buildings are used by the public and danger could arise from the ‘ ‘ congregation of nondescript characters ’ ’ and “easily become anything from a public nuisance to a serious menace.” However, prohibiting such harmful conduct does not prevent persons from being in a public building, who have a valid reason to be there. At the same time, by prohibiting acts which would obstruct corridors, stairways and doorways, the end result would be to prevent a situation that could be dangerous in time of fire or explosion or panic, which is, of course, well within the police power of a municipality. As to the second prohibition, the end result is to promote the conduct of public business for which the public building was designed and to prevent interference therewith, thereby promoting the public welfare of those who need the services provided within the building. The Supreme Court of the United States has recognized the necessity of governments to establish reasonable regulations with regard to public facilities. (Cox v. Louisiana, 379 U. S. 536, 553-554.) “Appellant, however, contends that as so construed and applied in this case, the statute is an unconstitutional infringement on freedom of speech and assembly. This contention on the facts here presented raises an issue with which this Court has dealt in many decisions, that is, the right of a State or municipality to regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use and the concomitant right of the people of free speech and assembly. [Court citing cases.] ”
The ordinance does not prohibit, as defendant contends, the right to petition or to publicly demonstrate. The record reveals *360 that picketing was being conducted in a peaceable manner and without interference on the part of the police authorities in the immediate vicinity of the public building in question. This must be contrasted with the Cox case (supra) where the whole issue turned on the right of the police to interfere with a public assemblage where there was doubtful evidence of anything but an exercise of constitutional rights. Another distinction is the statute itself. In Cox, the court held that it was unconstitutionally vague in its overly broad scope. “ The statute itself provides no standards for the determination of local officials as to which assemblies to permit or which to prohibit.” (Cox v. Louisiana, supra, p. 556.)
This court believes that the standards under the Syracuse Ordinance established definite guide lines, using language approved by our courts, and cannot be construed as vague or directed toward prohibiting innocent public assembly. The discretion vested in the police officers was not such as to provide them with no standards for enforcement. The duty of police officers “ is * * * * to protect persons from threatened wrong and to prevent disorder.’ * * * Reasonable discretion must, in such matters, be left to them ”. (People v. Galpern, 259 N. Y. 279, 281-282.)
The presumption of validity in the enactment of the ordinance has not been overcome nor has the presumption of its inherent constitutionality. (People v. Bell, 306 N. Y. 110, supra, Wiggins v. Town of Somers, 4 N Y 2d 215.)
Another ground urged as a basis for relief is that the People failed to prove the defendant was guilty beyond a reasonable doubt. However, from the record of trial testimony, the following’ facts appear: It is undisputed that the defendant came to the Police Station on West Willow Street, which at that time consisted of Police and Traffic Courts, the Traffic Violation Bureau and the jail area, and that he requested to see Chief Murphy, who was out at the time. The defendant was advised that he should make an appointment at some other time to see the Chief. Because of the anticipated demonstrations certain security measures had been taken with respect to the building; only those persons who had business within the building were allowed to enter. There is contradictory testimony as to the conduct of the defendant after he was advised Chief Murphy was out. One police officer by the name of MacDonald stated that the defendant insisted upon remaining on the stairway until he received a reply from a letter to Chief Murphy, and that he was advised to move off the steps or he would be in violation of the law. Officer Bush testified that the defend *361 ant was advised to evacuate the stairs and move down to the sidewalk, and also that the defendant insisted upon moving around on the stairway. Officer Surace testified that he saw people approaching the building as if to enter and when they saw the commotion caused by the combination of the defendant’s conduct and the newspaper reporters and photographers who had congregated, they left. He also testified that the defendant was moving back and forth across the width of the stairway. The defendant on the other hand, while he admitted that he refused to move off the stairway, stated that he was not in anyone’s way and that most of the time he stood at the side of the stairway. From all the evidence, the Trial Judge having-had an opportunity to observe all the witnesses on direct and under cross-examination, could have found that the defendant was guilty of violating section 38-a of the City Ordinance, beyond a reasonable doubt. The decision of the trier of the facts, under these circumstances, should not be disturbed unless it is clearly unsupported by the weight of the evidence. (People v. Farrell, 2 A D 2d 797.) In the case at bar there is such evidence.
All of the police officers testified that the defendant was requested more than once to leave the stairway and go down to the sidewalk or they would have to arrest him for obstructing a public entrance. As pointed out in People v. Thorpe (198 Misc. 462, 466): “ The police officer’s admonition * * was * * * a ‘ useful precaution to avoid possible disturbance ’ (People v Galpern, 259 N. Y. 279, 284). The defendant’s refusal to accede to the request of the police officer and their defiance and disregard of his instructions were calculated to annoy, disturb, interfere with, obstruct, or be offensive to others ’ within the purview of subdivision 2 of section 722 of the Penal Law.” Furthermore the court pointed out in People v. Biplce (115 N. Y. S. 2d 590, 593): “ The statute does not itemize the particular acts that constitute disorderly conduct. The eases listed under this statute are many and varied. A breach of the peace may be caused or threatened by acts as well as words. It may frequently happen that an isolated act may constitute a more serious threat to a breach of the peace than defamatory words.”
In the case at bar, if the court believed the testimony of the police officers, it could have found that the defendant deliberately refused to obey the officers’ orders to move down to the sidewalk. Under the foregoing cases, his conduct upon the stairway and refusal to obey the reasonable police order was such as to violate subdivision 2 of section 722 of the Penal *362 Law. This case appears analogous to that of People v. Galpern (259 N. Y. 279, supra), where while a different statute was involved, the Court of Appeals pointed out that police officers’ directions were intended to preserve public order (People v. Galpern, supra, p. 284) and “ Failure, even though conscientious, to obey directions of a police officer, not exceeding his authority, may interfere with the public order and lead to a breach of the peace.” (People v. Galpern, supra, p. 282.)
The final ground urged by the defendant is that his constitutional rights of assembly, free speech and petition are violated by the conviction. This court in its decision as to the other two grounds urged by the defendant has shown indirectly how the above contentions are not true. As pointed out previously, the rights of the entire group to picket were not interfered with. There was testimony that people who started toward the building, turned away when the defendant was on the stairs. This was not a situation, as in People v. Galpern (supra, p. 284) where the defendants were momentarily on the sidewalk after having attended a meeting. In the case at bar, the demonstration which the defendant engaged in was preconceived, planned and publicly announced prior to its occurrence. The police officers had reason to believe that a breach of the peace was occurring. The statutes in question were designed to protect the citizens of the community. Governmental influence over the freedom of a single individual must be weighed against the freedom which extends to all citizens. An individual’s rights are not such that they can infringe upon those of his fellow citizens or interfere with the normal processes of government. The conclusion of this court is therefore that the defendant’s constitutional rights of assembly, petition and free speech were not violated.
For the foregoing reasons, the judgment of conviction is affirmed in all respects.