Gibson, J. (dissenting).
The defendants, upon setting a hostile fire on a public street in Manhattan, in the midst of a closely *826 packed crowd of demonstrators, isolated and confined by police barricades, were arrested and subsequently convicted of disorderly conduct. The statute provides that: “ A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: * * * 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.” (Penal Law, § 240.20.) The defendants contend that the conviction was not supported by proof of guilt beyond a reasonable doubt and was, in any event, violative of their constitutional rights, and of those under the First Amendment in particular.
The demonstration occurred on East 70th Street, before the premises of the Permanent Mission of Israel to the United Nations and was intended, so far as can be gleaned from the limited testimony as to purpose, to protest a bloody encounter between Arab and Zionist groups in a Palestine village in 1948 and to petition the Government of Israel to prosecute the individual considered by the protesters to have been responsible.
At the trial, the arresting officer testified that approximately 150 to 200 people had congregated at the scene and that 50 to 75 of them were then, for purposes of their demonstration, permitted to enter a confined area directly opposite the mission. There, the defendants unfurled a 6-foot-by-8-foot flag of Israel and excised the Star of David, informing the crowd that this was being done “ to show that they were not against the Jewish religion but against the Israeli Mission.” Then, while other demonstrators held the flag outstretched, defendants ignited it with matches and lighters. When the flag was afire, the demonstrators were, according to the proof, standing close to the defendants, right around them. The arresting officer described the group as a crowd two, three, four deep, in a circle around the burning flag. He and other officers made their way through the crowd, seized the burning fabric, stamped out the fire and arrested the three defendants. The officer who testified at trial noted that while he felt the fire presented no danger to property or to passing pedestrians, he believed that it constituted a hazard to the demonstrators themselves.
Upon this record the conviction was warranted. The trial court found that defendants ’ acts were ‘ ‘ fraught with peril ’ ’ and the Appellate Term, in affirming, properly concluded: “ The Trial Judge could properly find that by igniting a 6-foot by 8-foot flag (of another country) in the midst of a large, closely *827 packed assemblage, defendants placed themselves and the others present in a dangerous situation. Such acts, violative of the public health, safety or well-being are not protected by the First Amendment [citations] ” (65 Misc 2d 707, 708).
It is rather clear, I think, that setting fire to a large piece of flammable material in the midst of a crowd whose dispersal and egress from a limited area would be hampered by police barricades created a hazardous condition within the meaning of the Penal Law provision. The hazard was no less because the fabric ignited was that of a flag and not that of an article without symbolic significance. The trial court which convicted and the Appellate Term which unanimously affirmed, accepted, as they had every right to do, the appraisal of the risk to which the arresting officer testified. This is a matter of judgment clearly dependent upon close and immediate observation, and it is one which has twice been confirmed by fact-finding tribunals, as to the degree of danger to be apprehended. I had thought that the properties of fire, and its potentials, were known to policeman as to Judges; and I would not have considered that the policeman’s sworn conclusion in respect of the predictable hazard required any great amount of testimonial corroboration.
In discussing another form of disorderly conduct we recently remarked that “ emphasis on the contention that the fact of disorder was not established, to the exclusion of the risk that it might come to pass, ignores the very terms of the statute itself ” (People v. Todaro, 26 N Y 2d 325, 329; emphasis as in original); this after quoting our observation in another case that: “ The courts cannot weigh opposing considerations as to the wisdom of the police officer’s directions when a police officer is called upon to decide whether the time has come in which some directions are called for ” (People v. Galpern, 259 N. Y. 279, 285).
In this case, the defendants, having created the condition of hazard proscribed by the statute, were not entitled to protest in that particular fashion but were privileged to exercise their First and Fourteenth Amendment rights in any manner not inimical to public safety; for, “ in sum, the cases show that the constitutional guarantee of free speech covers the substance rather than the form of communication, but that if the substance is being conveyed by a form violative of the public health, safety or well-being, then the First Amendment protection is subordinated to the general public interest ” (People v. Radich, 26 N Y *828 2d 114,118-119, affd. 401 U. S. 531, rehearing den. 402 U. S. 989; People v. Stover, 12 N Y 2d 462, app. dsmd. 375 U. S. 42).
In short, I find no more to the case than a conviction within the ambit of the statute, upon affirmed findings of fact clearly within the competence of the courts below; and, if any constitutional issue is discernible, it must yield to the superior right of government to preserve the public safety.
The order.should be affirmed.
Chief Judge Fuld and Judges Burke, Breitbl and Jasen concur in memorandum; Judge Gibson dissents and votes to affirm in a separate opinion in which Judges Scileppi and Bergan concur.
Order reversed and the complaint dismissed in a memorandum.