THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v LINCOLN MIGHTY, Defendant.

City Court of Rochester, December 15, 1988

APPEARANCES OF COUNSEL

*Robert B. Gitlin* for defendant. *Howard R. Relin, District Attorney (Alecia A. LaCapruccia* of counsel), for plaintiff.

OPINION OF THE COURT

HERMAN J. WALZ, J.

Defendant is charged with inciting to riot (Penal Law § 240.08) as the result of an incident which took place during a party at his home.

Under the statute a person is guilty of inciting to riot "when he urges ten or more persons to engage in tumultuous and violent conduct of a kind likely to create public alarm."

Defendant contends that the conduct charged does not constitute inciting to riot as a matter of law.

Rochester City Police went to defendant's home at 3:00 A.M. in response to complaints of noise and loud music. There they discovered that defendant was host to a sizeable social gathering, about 200 people says the information, replete with loud music and noise. The officers entered the premises and told the guests that the party was over, and began dispersing the crowd. Defendant made clear his position that this was his home, and that the police had no right to break up the party. He urged his guests to ignore the officers' instructions to leave. Defendant then treated the officers to a barrage of abusive language, name calling and accusations of racism. He restrained some guests as they attempted to leave. Apparently some guests echoed his defiance and became unruly, and responded, as the information recites, "in a violent manner", resulting in the arrival of "additional officers from other sections of the city in order to quell the crowd and to disperse them". A number of arrests were made.

The statute is directed at punishing those who urge riotous conduct, without the necessity of proving that a riot occurred. *(People v Winston,* 64 Misc 2d 150, 152.)

Not a crime under the former Penal Code, inciting to riot was added to the new Penal Law "since the conduct here proscribed may not meet the requirements for the commission of the offense of criminal solicitation". (Mem of Temporary Commn on Rev of Penal Law and Criminal Code, reprinted in 1967 NY Legis Ann, at 21.) A statute which proscribes conduct characterized primarily as speech may pose a serious threat to fundamental First Amendment freedoms. While the Supreme Court has recognized that "the societal value of speech must, on occasion, be subordinated to other values and considerations" *(Dennis v United States,* 341 US 494, 503), such subordination may occur only in limited circumstances. It is a basic principle that "constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *(Brandenburg v Ohio,* 395 US 444, 447.) In a similar context, the Supreme Court has said that freedom of speech is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconve-

nience, annoyance or unrest." *(Terminiello v Chicago,* 337 US 1, 4; *see also, Schenck v United States,* 249 US 47.)

New York courts have recognized that in order to pass constitutional muster the incitement statute necessarily includes the elements of intent and clear and present danger where the proscribed conduct is primarily speech. *(People v Winston, supra,* at 156; *People v Epton,* 19 NY2d 496, 506.)

Thus, the People must prove not only that defendant's conduct here created a clear and present danger of riotous behavior, but also that by such conduct he in fact intended a riot to ensue. *(See also, Dennis v United States,* 341 US 494, *supra.)* Anything less would be a serious incursion into one of our most cherished constitutional rights, that of free speech.

In the *Winston* case *(supra),* the court, citing the Practice Commentary to the sections proscribing riotous behavior, observed that " '[t]he phrase "tumultuous- and violent conduct", however, in itself clearly means much more than mere loud noise or disturbance. It is designed to connote frightening mob behavior involving ominous threats of injury, stone throwing or other such terrorizing acts.' " *(People v Winston,* 64 Misc 2d 150, 153, *supra.) Winston* involved an incident at a concert. During the concert word spread that security guards had taken a young man into custody and were beating him up. As the concert was letting out an angry crowd gathered outside. The defendant urged the crowd to disobey police directions to disperse, and urged them to break into the public auditorium where it was believed the young man was still being held. In finding the defendant guilty of inciting to riot the court said: "The defendant's words and conduct obviously amounted to more than just loud or even agitated conversation. They were clearly designed to further incite an already turbulent crowd and to effect a re-entry into the War Memorial by physically overwhelming the outnumbered police. Had they been overrun, the consequences to the security guards inside may have been bloody and brutal. No other reasonable interpretation can be made of the defendant's purpose, especially in view of the proof that, at the same time, rocks and bottles were being hurled." *(People v Winston, supra,* at 153.)

That decision is fact specific. It should not be extended so as to increase the limits on our citizens in expressing dissatisfaction with official action, or in urging that citizens take appropriate action, or, in this case, inaction against what is perceived to be official misconduct.

The People cite *People v Ascher* (57 Misc 2d 249), a case which appears to be an aberration. There, defendant urged people to come into a New York City street, thereby blocking traffic. It is clear that causing a traffic jam at 7:00 P.M. in midtown Manhattan created a tumult, but much more is required before the State may punish a citizen for speaking. The statute requires urging to tumultuous *and violent* conduct. That case should be read in its historical context, as indeed our court in the *Epton* case (19 NY2d 496, *supra)* tells us how we must read the famous decision of *Gitlow v New York* (268 US 652). That the *Ascher* case is a product of its time is confirmed by its dictum, which is a lecture to antiwar protestors.

Here, the defendant made a clear call to inaction: continue as guests at my party. While he was in effect urging his guests to disobey the orders of the police, this is the only activity he urged. The epithets which defendant hurled at police officers, set forth graphically in the information, could certainly cause a hateful and negative reaction to police officers who were simply performing clearly lawful activities. However, defendant is accused of doing no more. He did not urge the crowd to carry the message of defiance out into the streets. He did not ask them to converge on the officers or to take any specific action against them. Defendant wanted his guests to defy police orders and remain on his private property. He wanted it so much that he tried to restrain people from leaving. But the activity that he urged does not amount to "tumultuous and violent conduct of a kind likely to create public alarm." It is unfortunate that violence erupted in response to lawful police actions that evening. However, it cannot be said that by asking his guests to stay at the party or by calling police officers offensive names, the defendant either created a clear and present danger of riotous conduct, or intended a riot to ensue.

Reading this statute narrowly, as a court must do when the statute derogates the ancient common law and constitutional right to speech, this court must grant defendant's motion to dismiss the information charging him with one count of inciting to riot.