OPINION OF THE COURT
William M. Harrington, J.
Motion to Dismiss Based upon Lack of Facial Sufficiency
It is alleged that, within days of the September 11, 2001 terrorist assault on the World Trade Center, defendant and several alleged accomplices, on 42nd Street in the vicinity of Times Square, shouted at a gathering crowd of approximately 50 people in praise of the terrorist attack and the resulting deaths of police officers, firefighters, and civilians; vehemently expressed their shared disappointment that the carnage had not been greater; and accosted people in the crowd, yelling in the onlookers’ faces, “We’ve got something for your asses.” It is further alleged that arguments ensued between defendants and some of the crowd, and that defendant and his alleged accomplices refused to disperse after police officers asked them to do so. Defendant argues that the accusatory instrument, which charges him and two codefendants with inciting to riot (Penal Law § 240.08) and disorderly conduct (Penal Law § 240.20 [1]), is not facially sufficient and must be dismissed. Specifically, defendant argues that his actions, rather than criminal, were an exercise of his right to free speech under the First Amendment of the United States Constitution.[1]
To be sufficient on its face, an accusatory instrument must contain factual allegations of an evidentiary character demonstrating reasonable cause to believe that defendant committed the offenses charged. (See CPL 100.15 [3]; 100.40 [1] [b].) These facts must be supported by nonhearsay allegations which, if true, establish every element of the offense. (See CPL 100.40 [1] [c].) Conclusory allegations are insufficient (see People v Dumas, 68 NY2d 729 [1986]), and where the factual portion fails to establish every element of the offense charged, a motion to dismiss for facial insufficiency must be granted. (See People v Alejandro, 70 NY2d 133 [1987].) After reviewing the complaint, and after consideration of defendant’s motion to dismiss and the People’s opposition thereto, the court concludes that the accusatory instrument is facially sufficient. Therefore, and for the following reasons, defendant’s motion is denied.
*706 Inciting to Riot
Penal Law § 240.08 provides that a person is guilty of inciting to riot “when he urges ten or more persons to engage in tumultuous and violent conduct of a kind likely to create public alarm.” (See Penal Law § 240.08.) Although Penal Law § 240.08 does not expressly provide for the element of intent, courts have recognized that in order to pass constitutional muster the incitement statute necessarily includes the “elements of ‘intent’ and ‘clear and present danger’ before one’s freedom of speech may be abridged under the First Amendment.” (See People v Tolia, 214 AD2d 57, 63-64 [1st Dept 1995], citing Brandenburg v Ohio, 395 US 444, 447-448 [1969], and People v Winston, 64 Misc 2d 150, 156 [Monroe County Ct 1970].) “Thus, the People must prove not only that defendant’s conduct * * * created a clear and present danger of riotous behavior, but also that by such conduct he in fact intended a riot to ensue.” (People v Mighty, 142 Misc 2d 37, 39 [Rochester City Ct 1988], citing Dennis v United States, 341 US 494 [1951].)
The complaint contains the following narrative of defendant’s alleged criminal conduct:
“Deponent [Police Officer Charles Carlstrom] states that he observed each defendant at [234 W. 42nd Street in the County and State of New York] yelling and stating in substance: its good that the WORLD TRADE CENTER WAS BOMBED. MORE COPS AND FIREMEN SHOULD HAVE DIED. MORE BOMBS SHOULD HAVE DROPPED AND MORE PEOPLE SHOULD HAVE BEEN KILLED. WE’VE GOT SOMETHING FOR YOUR ASSES.
“Deponent states that a total of 5 defendants (Eric White, Reggie Upshaw, Steven Murdock, Jesse Atkinson and Kyle Jones) where [sic] yelling the above statements to a crowd of approximately 50 people. Deponent states that said people gathered around defendants and some of said people yelled back at defendants.
“Deponent states that defendants did approach people in the crowd and yell in their faces.
“Deponent further states that defendants were asked to disperse and refused to do so.
“Deponent states that defendants’ conduct caused the crowd to gather and arguments to ensue.”
Arguing that the complaint does not allege that he acted with the requisite intent to incite a riot, defendant contends *707 that the complaint alleges merely that he “spoke in praise of the assault on the World Trade Center and stated that worse should have happened” (Defense Affirmation at 2), but does not allege that “defendant urged or encouraged people to commit acts of terrorism or treason.” (Id.) Quoting from Brandenburg v Ohio (395 US at 447-448), defendant analogizes his conduct to “the mere abstract teaching * * * of the moral propriety or even moral necessity for a resort to force and violence” (id.) in contrast to “preparing a group for violent action and steeling it to such action.” (Id.) In defendant’s view, “the language attributed to defendant was an expression of a political nature, intended to spur debate and thought, not to create the type of public harm contemplated by the statute.” (Defense Affirmation at 2.)[2]
In analyzing whether the allegations in the complaint evince defendant’s intent that his alleged conduct lead to riotous behavior, and whether his alleged conduct created a clear and present danger of riotous behavior, it is necessary to consider defendant’s words and deeds in the context in which he and his alleged accomplices spoke and acted. (See Schenck v United States, 249 US 47, 52 [1919] [in analyzing question of “clear and present danger,” court must look to circumstances in which the speech occurred and nature of the words].) The alleged crime took place only days after one of the greatest catastrophes this nation has suffered[3] — the overwhelming brunt of which was felt most keenly here in New York — and within sight of the massive smoke plume emanating from the still-smoldering mass grave site that had been the twin towers of the World Trade Center. It took place while many New Yorkers were grieving for the loss of loved ones or praying in hope that the *708 missing might yet be found, and as New Yorkers, indeed, all Americans, held their collective breath at what, at the time, appeared to be the likelihood, if not the inevitability, of additional terrorist attacks. It was under these circumstances that defendant and his cohorts allegedly chose a crowded 42nd Street near Times Square as their venue not merely to engage in what any reasonable person would consider to be a vile and morally reprehensible diatribe, but to intentionally confront the gathering crowd, at point blank range, for the purpose of inciting riotous behavior.
There can be no doubt that the words and deeds alleged in the complaint make out the elements of the crime of inciting to riot. According to the complaint, defendant and his accomplices used extremely inflammatory language calculated to cause unrest in the crowd; praising the tragic deaths of thousands of innocents at the hands of terrorists and wishing for even more carnage while the threat of further attacks loomed over the city cannot be considered “an expression of a political nature, intended to spur debate and thought, not to create the type of public harm contemplated by the statute” (Defense Affirmation at 2), to use defendant’s words. The talismanic phrase “freedom of speech” does not cloak all utterances in legality. “It is one thing to say that the police cannot be used as an instrument for the suppression of unpopular views, and another to say that, when[ ] the speaker passes the bounds of argument or persuasion and undertakes incitement to riot, they are powerless to prevent a breach of the peace.” (Feiner v New York, 340 US 315, 321 [1951].)
Viewed in context, defendant’s words — it’s good that the WORLD TRADE CENTER WAS BOMBED. MORE COPS AND FIREMEN SHOULD HAVE DIED. MORE BOMBS SHOULD HAVE DROPPED AND more people should have been killed — were plainly intended to incite the crowd to violence, and not simply to express a point of view.[4] But the allegations extend beyond mere words. It is further alleged that defendant accosted people in the *709 crowd and shouted a threat — we’ve got something for your asses — directly into the faces of some of the onlookers. It is also alleged that as the confrontation escalated, defendant and his accomplices refused police entreaties to disperse. This conduct went well beyond protected speech and firmly into the realm of criminal behavior. It was far more than “the mere abstract teaching * * * of the moral propriety or even moral necessity for a resort to force and violence” (Defense Affirmation at 2); under the circumstances, it constituted the very real threat of violence itself.
Disorderly Conduct
Penal Law § 240.20 provides, in pertinent part, that a person is guilty of disorderly conduct “when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof * * * [h]e engages in fighting or in violent, tumultuous or threatening behavior.” (See Penal Law § 240.20 [1].) The court relies on the recitation above in concluding that the elements of disorderly conduct are made out by the complaint. Defendant’s words and deeds as alleged in the complaint demonstrate his intent to cause public inconvenience, annoyance, or alarm, or recklessly create a risk thereof by engaging in tumultuous or threatening behavior. Therefore, defendant’s request to dismiss both counts in the accusatory instrument is denied.
Remaining Requests for Relief
Defendant’s request for a Dunaway/Wade hearing is granted.
Defendant’s request for a bill of particulars and the defendant’s request for discovery are granted to the extent provided in the People’s response and voluntary disclosure form.
Defendant’s motion for a Sandoval ruling is referred to the trial court.
The People are reminded of their continuing duty to supply all Brady material to defendant.

. Defendant does not cite the New York Constitution in support of his motion.

. Defendant relies principally on Brandenburg v Ohio (395 US 444) in support of his motion. However, the case, while instructive, is not on point. In Brandenburg, the United States Supreme Court struck down the Ohio Criminal Syndicalism statute on the ground that it was unconstitutionally overbroad because it punished mere advocacy of the use of force without regard to whether the advocacy was directed to inciting imminent lawless action. (See Brandenburg v Ohio, 395 US at 447-448.) In the instant case, defendant does not assert that Penal Law § 240.08 or § 240.20 (1) is overbroad or otherwise unconstitutional per se; rather, defendant merely contends that the complaint fails to allege facts from which it could be inferred that he intended to cause a riot or disturbance and that his actions presented a clear and present danger of creating unrest.

. It is estimated that approximately 3,000 people died in the World Trade Center attack. By comparison, 2,403 Americans were killed in the attack on Pearl Harbor. (Source: Department of the Navy — Naval Historical Center, Washington, D.C.)

. Defendant claims that it is not alleged that he “urged or encouraged people to commit acts of terrorism or treason.” (See Defense Affirmation at 2.) However, Penal Law § 240.08 does not require that defendant incite people to riot in his behalf, rather, all that is required is that defendant urge 10 or more persons to engage in tumultuous and violent conduct of a kind likely to create public harm. (See Penal Law § 240.08.) Angrily confronting and threatening a crowd of onlookers with the intent to stir the crowd to violence is sufficient; the object of that tumultuous or violent conduct is irrelevant so long as the conduct defendant urges is of a kind likely to cause public harm. (See People v Feiner, 300 NY 391 [1950], affd 340 US 315 [1951] *709 [upheld defendant’s conviction for disorderly conduct where defendant interfered with traffic and deliberately goaded onlooking crowd composed of a mixed audience of sympathizers and opponents to confront each other].)